## St. Louis, Oak Hill and Carondelet Railway Company v. Fowler et al.; Rothan, *Appellant.*

### Division One, February 23, 1898.*

1. **Evidence:** WHEN ADMISSIONS OF ONE DEFENDANT ARE BINDING ON OTHERS. When parties prove a joint interest in the matter in suit, an admission by one is generally evidence against all. But in this case, which is one for damages in a condemnation proceeding, the appellant seeks to avoid the rule because the defendants were cotenants in the land, and that therefore the admission in evidence of an assessment list, made by appellant, in which he values the land for himself and cotenant, was error, since it was received as an admission of a cotenant. Respondent argues that this contention is overcome by the following agreement: "It is agreed that at the date of the institution of this suit, the property of the present defendants now in question was owned by the original defendants, Isaac L. Rothan and Rosa Goldsmith, as tenants in common, share and share alike; that is to say, that Isaac L. Rothan and Rosa Goldsmith each owned an undivided one half of said property. It is further agreed that one half of the total damages to said land shall be assessed in favor of said Isaac L. Rothan, and the other half in favor of Adolph Loth, executor of Rosa Goldsmith." *Held,* that without the stipulation the admission in the assessment list would not have been admissible against the other defendant, but under the stipulation the other defendant could not complain that it was admitted.

2. ———: VALUES OF LAND: DEEDS AS CONTRADICTION. Where a witness testifies that five sales of land in a certain block were made by one Stein in 1886 and 1887, at a certain price, it is proper to introduce in evidence, for the purpose of contradiction, three deeds made by Stein in 1887, since the consideration expressed in the deeds both impeaches his estimate of the value of the land and contradicts his testimony.

3. ———: CONDEMNATIONS: MEASURE OF DAMAGES: GENERAL BENEFITS. In a proceeding to condemn land for a railroad right of way the damages and benefits to the remaining tract should be estimated in view of the condition in which the land is left, the purposes for which the railroad is to be used, and the rights of the parties as they exist at

*NOTE.—Decided January 18, 1898, and motion for rehearing denied February 28, 1898.

the trial. In this case it is *held*, in view of a statute requiring railroads to operate switches under certain conditions, that an instruction which told the jury to consider the benefits of "switch facilities" if the remaining land were used for manufacturing purposes, was not erroneous, the objection of appellant being that there was no evidence of any obligation on the railroad to allow owners of the land to connect switch tracks to its railroad. It is also *held* that "switching facilities," which a railroad is bound under this statute to provide and operate, are not general benefits, but special.

4. **Railroad Switches:** OBLIGATORY ON COMPANIES. The duty imposed upon railroads by section 2623, Revised Statutes 1889, to construct switch connections, is as binding upon the road to furnish such facilities as a personal covenant would be.

5. **Statute Rights of Parties After Judicial Construction.** A judicial construction of a statute becomes a part of it, and as to the rights which accrue afterwards it should be adhered to for the protection of those rights.

6. **Condemnation Proceedings:** INTEREST ON THE AWARD. Before a railroad company can take possession of land in a condemnation proceeding, it must pay into court the amount of the award made by the commissioners. This money, so deposited, is not compensation for the land, but only security that compensation will be paid when ascertained in a subsequent proceeding. When so deposited, it may be withdrawn by the landowner, but if not withdrawn the landowner is entitled to whatever interest it earns while so deposited, and if not loaned while so deposited the railroad company is not chargeable with interest thereon.

*Appeal from St. Louis City Circuit Court.*—HON. JAMES E. WITHROW, Judge.

AFFIRMED.

*David Goldsmith* for appellant.

(1) The trial court erred in receiving in evidence the tax returns made by defendant Rothan. 2 Wharton on Ev. [3 Ed.], sec. 1199; 1 Greenl. on Ev. [15 Ed.], sec. 176; *The New Orleans*, 106 U. S. 13; *McLellan v. Cox*, 36 Me. 95; *Dean v. Ross*, 105 Cal. 231; *Prewett v. Coopward*, 30 Miss. 389; *Thompson v. Thompson*, 13 Ohio St. 360; *McMillan v. McDill*, 110

Ill. 51, 52; *Dale's Appeal*, 57 Conn. 140; *Shailer v. Bumstedt*, 99 Mass. 130; *O'Connor v. Madison*, 98 Mich. 190, 191; *Livingston's Appeal*, 63 Conn. 76; *Nussear v. Arnold*, 13 S. & R. 323; *Clark v. Morrison*, 25 Pa. St. 453; *Blakely v. Blakely*, 33 Ala. 617; *Forney v. Ferrell*, 4 W. Va. 739; *La Bau v. Vanderbilt*, 3 Redf. (N. Y.) 408. (2) The trial court erred in receiving in evidence the deeds offered in contradiction of Mr. Gehner's testimony. *Rose v. Taunton*, 119 Mass. 99. (3) The restrictions placed by the trial court upon the cross-examination of the witness Rutledge were erroneous. *Pierce v. City of Boston*, 41 N. E. Rep. 229. (4) The giving of the instruction numbered 1 was erroneous in that it warranted deductions for switching facilities or otherwise as special benefits, and in that it did not restrict the amount thereof to increased values existing at the date of the filing of the report of the commissioners. There was no evidence whatsoever of any special benefits other than switching facilities, and in regard to these the evidence was inadequate because it failed to show any obligation on the part of plaintiff to permit the construction of switches. *Drury v. Railroad*, 127 Mass. 585; *Railroad v. Miller*, 125 Mass. 1; *Hook v. Railroad*, 133 Mo. 321; *Railroad v. Stock Yards*, 120 Mo. 542. (5) Instruction number 2, given by the court, was erroneous in that it permitted of the consideration of general benefits. *Railroad v. Fowler*, 113 Mo. 470; *Railroad v. McDonald*, 12 Heisk. 54; *Oloe Co. v. Haye*, 19 Neb. 292.

*Martin L. Clardy* and *Henry G. Herbel* for respondent.

(1) There can be no doubt about the competency of tax returns in cases of this character as tending to

prove the value of the land.  *Railroad v. Smith*, 7 So.
Rep. 634; *President, Etc. v. Juniata Co.*, 22 Atl. 896;
*Reiser v. Portere*, 63 N. W. Rep. 1041; *Probst v. Ins.
Co.*, 64 Mo. App. 412; *Bogie v. Nolan*, 96 Mo. 91;
*Peck v. Williams*, 113 Ind. 256; *Hurst v. Robinson*, 13
Mo. 83; *Armstrong v. Farrar*, 8 Mo. 627; *Richmond v.
Cross*, 12 Mo. 77; *Allen v. Allen*, 26 Mo. 331; *Jackson
v. Harding*, 83 Mo. 186; *Price v. Town of Breckenridge*,
92 Mo. 384; *St. Louis Paint Co. v. Mepham*, 30 Mo.
App. 24; *Campbell v. Gas Light Co.*, 84 Mo. 352;
*Young v. McDow*, 87 Mo. 197; *Robidoux v. Cassilleggi*,
10 Mo. App. 516; *Warfield v. Lindell*, 38 Mo. 561;
*Beck v. Kollmeyer*, 42 Mo. App. 271. · (2) The point
made by defendants on the introduction of the Stein
deeds is clearly without merit. The purpose of their
introduction was, as stated by counsel for plaintiff, to
impeach the testimony given by Mr. Gehner. (3)
Counsel, we think, was granted a very liberal latitude
in the cross-examination of Rutledge, but when they
sought to introduce such collateral issues as the cost
of improvements, viz., sewers, grading, guttering,
paving, tree planting, sodding, etc., on another piece
of ground, in order that the jury might by some intri-
cate process of reasoning guess the value of the land
in its virgin state, we think it was time for us to object
and the court to sustain the objection. (4) The crit-
icism of plaintiff's first instruction is extremely hyper-
critical. R. S. 1889, sec. 2623. (5) The objection
made by the defendants to the second instruction given
for plaintiff to the effect that the jury may have
considered general benefits, is pointless in view of the
repeated rulings of the trial court excluding evidence
of such benefits, and of the other instructions, with
which this one must necessarily have been considered,
which expressly excluded such general benefits. (6)
According to the refused instruction, defendants would

have been entitled to interest on the money deposited with the clerk of the court, which they have refused and still refuse to take. *Railroad v. Fowler*, 113 Mo. 458; *Railroad v. Clark*, 119 Mo. 357.

*David Goldsmith* for appellant in reply.

(1) Several pages of appellant's brief are devoted to the general proposition that the admissions of a party are competent as against him. This is elemental law. Next, the argument is made that the admissions of a person are competent as to all who have a joint interest with him. That we have no idea of disputing. But the relations of the defendants are admitted to be those of tenants in common and not joint tenants, and, as shown by the authorities cited in our main brief, the declarations of one tenant in common are not competent against his cotenant. Greenl. on Ev. [15 Ed.], sec. 176. (2) The following adjudications sufficiently establish that, in regard to matters of taxation, one tenant in common has no implied authority to bind his cotenant as agent. *Reed v. Crapo*, 127 Mass. 39; *Thurston v. Miller*, 10 R. I. 358; *Howze v. Dew*, 90 Ala. 178. (3) The fact that one piece of land had been graded, sewered, etc., does not prevent it from being a proper criterion of the value of other land similarly situated, but not thus improved; for the deduction of the expenses of the improvement will put both parcels on the same basis. *Pierce v. Boston*, 41 N. E. Rep. 229; *Uneacke v. Railroad*, 67 Wis. 108; *Railroad v. Clark*, 120 Mo. 188.

MACFARLANE, J.—This is a proceeding by the plaintiff, a railway company, to condemn for right of way a strip of land through a twenty-four acre tract belonging to defendants, situate within the limits of St. Louis.

The proceedings were commenced in 1886. Commissioners were appointed, who awarded to defendants $2,580 damages. On exceptions thereto, filed in the circuit court, a trial by jury was had and the damages were assessed at $11,541.20. On appeal to this court the judgment was reversed. On a re-trial by a jury the damages were assessed at $3,850, and defendants appeal. During the trial the following stipulation was made by the parties: "It is agreed that at the date of the institution of this suit, as well as on November 22nd, 1886, the property of the present defendants now in question was owned by the original defendants, Isaac L. Rothan and Rosa Goldsmith, as tenants in common, share and share alike; that is to say, that said Isaac L. Rothan and Rosa Goldsmith each owned an undivided one half of said property. It is further agreed that one half of the total damages to said land shall be assessed in favor of said Isaac L. Rothan, and the other half in favor of Adolph Loth, executor of Rosa Goldsmith." Evidence was offered by defendants tending to prove the damages sustained, and by plaintiff tending to prove that the remainder of the tract would be specially benefited by the railroad. Exceptions were saved to the admission and rejection of evidence, and to the giving and refusing of instructions. The questions for decision will be stated in the opinion.

I. It is first insisted that the court committed error in permitting plaintiff to introduce in evidence an assessment list made by defendant Rothan on July 11, 1887, in which he values the land at $10,000. It appears that the court admitted the evidence as an admission of Rothan, and as affecting his interest alone. Counsel for the other defendant does not controvert the well recognized rule of evidence that admissions and declarations of a party, made against his interest,

may be given in evidence against him, and agrees that if Rothan was the sole defendant there would have been no error in the admission of the evidence; but it is argued that the admission of one tenant in common is not receivable as evidence against his cotenant, though both are parties to the same suit, and the evidence, when admitted, necessarily affected the rights of the other defendant, for the reason that the parties had stipulated that the jury should assess the same amount of damages to each of the cotenants.

We do not consider it necessary to determine the question, whether the admissions of Rothan were receivable as evidence against his cotenant. There can be no doubt that they were competent as evidence against the party making them, and we do not think such effect should be given to the stipulation as would prevent the introduction of any evidence tending to reduce the damage of either party, which would be otherwise competent. Without the stipulation the evidence was admissible against Rothan. When the defendants agreed that the damage to each of them should be the same, they agreed in effect that the jury should disregard the respective interests of the parties, and find the damage done to the land and divide it between the defendants, thereby making the rights of the cotenants joint, and for the purposes of the suit, inseparable. It is well settled law, at least in this State, that if parties prove a joint interest in the matter in suit, whether as plaintiffs or defendants, an admission by one is, in general, evidence against all. *Armstrong v. Farrar*, 8 Mo. 629; *Hurst v. Robinson*, 13 Mo. 83. The legal effect of the stipulation is that each party waived all objection to evidence which was admissible against the other. The parties placed themselves in the position of joint owners in respect to the damages to be assessed, and on the trial should not be

permitted to *shift* their position, and claim as tenants in common, in order to prevent the introduction of evidence which would be competent if the ownership was joint. We do not think defendants can complain, though the admissions of Rothan, in the absence of the stipulation, would not have been admissible against the other defendant.

II. The testimony of a witness, taken on a former trial, was read in evidence by defendants. He testified to the value of the land, and based his estimate largely upon sales made by him as agent for one August Stein, in 1886 and 1887, of lots in Fairmount addition. The witness was not present at the trial. In rebuttal plaintiff read in evidence three deeds made by August Stein in 1887, to lots in said addition, by which it appeared that the consideration was much less than that given from memory by the witness. Defendants complain of the admission of these deeds upon the ground that they were not properly identified as the consummation of the sales to which the witness referred. There is no doubt that the plaintiff had the right to prove that the consideration for the sales of land, upon which the witness based his estimate of the value, was less than that testified to by him. It would tend to impeach his estimate of value, as well as to contradict his testimony. Plaintiff makes no claim that the deeds were admissible for any other purpose.

The question then is, was a sufficient foundation laid for admission of this impeaching testimony? The witness testified that the sales of lots in Fairmount addition were made by August Stein in 1886 and 1887. The deed shows the conveyance of lots in the same addition by August Stein in the year 1887. The witness could not state the names of the vendee, but gave it as his recollection that four or five sales were made by Stein. It seems to us that a foundation for the admis-

sion of the deeds could not, in the circumstances, have been more completely laid. If five sales were made by Stein, three of them must have been executed by the deeds offered in evidence. The vendor and grantor were the same, the land was in the same addition, and the deeds were made within the time specified by the witness. We think it sufficiently appears that the sales referred to by the witness were the same as those evidenced by the deeds. The deeds were admissible to show the probative value of the opinion of the witness, as well as to contradict him.

III. A witness called by plaintiff testified to the value of defendant's land and to the damages thereto caused by the location of the road across it. His estimate of the value was based upon sales of two similar tracts of land near by. It was shown that one of these tracts had been platted into lots, blocks and streets; that the streets had been graded, sidewalks laid, sewers constructed, trees planted and other improvements made. On cross-examination the witness was asked by defendant's counsel whether some of these lots had not sold for as much as $25 per front foot. This evidence was excluded by the court on objection of counsel for the plaintiff. We think the learned circuit judge ruled correctly. Evidence of sales of other land, to be admissible, should be confined to sales of property similar in character. *Railroad v. Clark*, 121 Mo. 185. Sales of small residence or business lots on improved streets would give the jury no assistance in estimating the value of a tract of twenty-four acres of unimproved land.

IV. By the first instruction given at request of plaintiff the jury were told that if the remaining parts of the tract were suitable for manufacturing purposes and their value was enhanced by reason of "switching facilities or otherwise, to an extent equal to or beyond

the amount they were damaged for subdivision into residence purposes," then their verdict would "be limited to the value, on the twenty-second day of November, 1886, of the strip of land actually appropriated by the plaintiff for its right of way." In his objection to this instruction counsel insists that there was no evidence of any obligation on the part of the railroad company to allow to the owners of the remaining land the right to connect switch tracks to its railroad, or to give such owners switching facilities, and for that reason the instruction is erroneous. On the trial defendants insisted that the remaining parts of the land would be greatly damaged for residence purposes, and plaintiff insisted that while that might be so, the facilities for transportation afforded by the railroad increased its value for manufacturing purposes, and this would result in part as the effect of facilities for running switch tracks into the road without being required to cross public streets. Much of the evidence on the trial was directed to these questions. There was no evidence of an offer or agreement by plaintiff to permit or provide switch connections with its track. The question, then, is whether "switching facilities," as used in the evidence and instructions, is a matter of special benefit which should have been considered by the jury in reduction of the damage to the land remaining after the appropriation.

The following instruction for estimating the damages of a landowner, in condemnation proceedings, has received the approval of this court in a number of cases and is the rule generally adopted in other jurisdictions: "In estimating the damages to the land the jury will consider the quantity and value of the land taken by the railway company for right of way and the damage to the whole tract by reason of the road running through it; and deduct from these amounts the benefits, if any,

peculiar to said tract of land arising from running the road through the same.    And by peculiar benefit to the land is meant such benefits as that land derives from the location of the road through it, as are not common to the other land in the same neighborhood." *Railroad v. Ridge*, 57 Mo. 601; *Lee v. Railroad*, 53 Mo. 179; *Railroad v. Waldo*, 70 Mo. 630; *Hickman v. Kansas City*, 120 Mo. 121, and cases cited.    It is also held that the appropriation is complete when the damages assessed by the commissioner have been paid to the landowner, or into court for him, and the condemning company has taken possession of the land.    The value of the land is to be estimated as of the date of the appropriation.    The proceedings subsequent to the appropriation are for ascertaining the damages sustained in consequence of the "establishment, erection and maintenance of the railroad."    *Railroad v. Clark*, 121 Mo. 195; R. S. 1889, secs. 2734 and 2738.    In the case cited it was held further that the damages to the land remaining after the appropriation should be estimated in view of the plans the railroad company had adopted in the construction of its road and the condition in which the remaining land was left.    These estimates of damages, if the road has been constructed and put in operation, should be made on the basis of the condition of the remaining land at the date of the trial.    Applying these principles it was held that a railway company, in a proceeding for the assessment of damages, conducted after the appropriation, may at the trial, and for the purpose of reducing the damages, agree to construct or open crossings to aid the owner to use, as one tract, the land remaining on either side of the road.

The tract of land in question in this case lies contiguous to a great manufacturing city.    The railroad is but a few miles in length and was intended to secure

business from the suburbs of the city.   The tra ct was so near to the city as to be valuable for residence and manufacturing purposes.   Facilities for transportation is essential to successful manufacturing enterprises, and it is evident that land suitable for such purposes might be greatly enhanced in value on account of such facilities.   At the time the land was appropriated and the railroad was built the company was under no special obligation to grant to the owners of land contiguous to it such facilities for transportation as would induce manufacturers to establish their factories upon it.   But considering the purposes for which the road was constructed, the locality of the land, and the interests of the company from a business standpoint, we could not say that in estimating the benefits to the land the jury should not consider the special advantages for transportation the road would afford to the owners of the remaining land.   What the effect on the value of the land would be, the jury could determine.   But after the appropriation of the land and before the trial an act of the General Assembly was passed and approved, which is now section 2623 of the Revised Statutes of 1889.   The section is as follows:   "Any person or corporation owning or operating any coal, lead, iron or zinc mine, or other ore, or any saw mill or other industry, whenever in the opinion of the railroad commissioners the amount of business is sufficient to justify the same, near or within a reasonable distance of any railroad track, may, at their or its expense, build and keep in repair a switch leading from such railroad to such mine, saw mill or other industry. Such railroad company shall be required to furnish the switch stand and frog and other necessary material for making connection with its track, and shall make such connection, the party owning such mine, saw mill or other industry to pay the actual costs thereof; and if

any railroad company, after demand is made, shall refuse to furnish said material for making said connection and put the same in place, or after the building of such switch shall fail or refuse to operate the same, such railroad company failing and refusing shall forfeit and pay to the party or corporation aggrieved the sum of five hundred dollars for each and every such offense, together with a reasonable attorney's fee, to be recovered by civil action in any court of competent jurisdiction; and every day of such refusal on the part of any railroad company to operate such switch aforesaid, after demand is so made, shall be deemed a separate offense.'' At the time of the trial, under the provisions of this statute, the owner of the remaining land, who should establish an industry thereon, in which the amount of business is sufficient to justify the same, has the right to switch connections, which the company is bound to provide and operate. The duty imposed upon the company by the statute is as obligatory upon it as a personal covenant to furnish such facilities would be.

Following the rule adopted in the *Clark* case, *supra*, by the Court *in Banc*, the damages and benefits to the remaining tract should be estimated in view of the condition in which the land is left, the manner in which the road is to be used, and the rights of the parties as they exist at the time of the trial.

The same rule has been approved by the Supreme Court of Illinois in *Hayes v. Railroad*, 54 Ill. 375, where the court say: ''It is claimed that evidence in regard to the location of the depot was not relevant because it was not determined upon at the time of the taking of the defendants' land in August, 1869, and that only the state of facts then existing could be considered. That is the time in reference to which the value of the land taken is to be estimated. But when damages and

benefits come to be estimated, by reason of the construction and use of the road, the manner in which the road is to be constructed and used is important; the location of a depot pertains to its construction and use, and if that particular, in the manner of the construction and use of the road, has not been determined upon until the trial, we think it may then be considered upon the question of benefits and damages." See, also, *Railroad v. Fletcher*, 128 Ill. 626; *Packard v. Railroad*, 54 N. J. Law, 553; *McGregor v. Equitable Gas Co.*, 21 Atl. Rep. (Pa.) 13.

V.   But defendants insist that the benefits derived from switching privileges are not peculiar to their land, but are common to all land located on or near the line of the road, and therefore should not have been taken into account for the purpose of showing the real injury done to the residue of the land. It is probably true that lands adjacent to the road, which are not touched or damaged by the railroad, have the same advantage of switching facilities as is secured to the residue of the land of defendants after a portion has been appropriated. But we do not think that circumstance makes the benefits to defendants' land general within the meaning of the law which excludes general benefits from consideration in estimating the damage.   A general benefit is an advantage "conferred by the public work upon all property within range of its utility."   A special benefit is "an advantage conferred upon a tract by reason of the maintenance of a public work upon it."   Randolph, Em. Dom., secs. 269, 270.   As defined by Lewis: "General benefits consist of an increase in the value of land common to the neighborhood or community generally, arising from the supposed advantages which will accrue to the community by reason of the work or improvement in question." Lewis, Em. Dom., sec. 471. If defendants' land receives benefits, by reason of

switching facilities, greater in degree than the advantages all the land in the community receives from the construction of the road, then it could be a matter of no importance that other land which receives no damage is also specially benefited.    The widening of a street, by taking land from one side only, benefits the property on the other side though the owner bears no part of the damage caused by the improvement, yet the owner of the land taken may be charged with the special benefits to his remaining land.    *Abbott v. Cottage City,* 143 Mass. 521; *Allen v. Charleston,* 109 Mass. 246.    Switching privileges, such as are required by the statute to be provided, are only of advantage to those who own land "near or within a reasonable distance of of the railroad."    The benefits are not common to all the land in the community generally, but are special to the land which is so situated that they can be used. We are of the opinion, after a careful reconsideration of the questions involved in the ·criticised  instruction, that the jury had the right, in making its estimate of damage, to take into consideration the benefits that accrued to the land on account of switching facilities, required by the statute to be provided, and that the law was correctly given to the jury.

VI.    The second instruction given for plaintiff told the jury that "unless they find from the evidence that defendants have sustained damages by reason of the appropriation of a part of what is known as the Rothan property beyond the value of the land actually taken by the railroad company, their verdict should be for the value of the property so taken as shown by the evidence, and no more."    Appellants complain that the instruction authorizes a comparison of the value of the land before and after the railroad was located thereon, and leaves the jury to find the difference in such value as the amount of damages to be assessed, without re-

gard to the general appreciation of the value in common with other lands in the community. In other words, that it leaves the jury, in estimating the damages, to take into consideration the general benefits to the land on account of the construction and operation of the road. The instruction, if standing alone, might be open to the criticism made against it, but by other instructions the jury is distinctly told that no deductions should be made on account of general benefits. On the question of the consideration of benefits the court, of its own motion, gave this instruction: "The jury should first ascertain and assess the value on November 22, 1886, of the strip of land taken by the plaintiff for its right of way through said tract. And if the jury find from the evidence that the value of the remainder of said tract, that is, of either or both portions of said tract on either side of said railroad, was on November 22, 1886, diminished by the location of said railroad through it, then the jury must, in addition to the said value of said right of way, further allow the defendants the amount of any and all of such diminution in value. And if the jury should also find from the evidence that there were peculiar benefits to said land by reason of the location of said railroad through it, and that such peculiar benefits enhanced the value of said land on November 22, 1886, then such peculiar benefits must be deducted from such damages; but by peculiar benefits are meant only such benefits, if there were any, as said tract derived from the location of said railroad through it and as were not common to other lands in the same neighborhood which do not lie or abut on said railroad, and no deduction whatsoever should be made for any benefits, if there were any, which were derived from said location of said railroad not only by said tract of land, but also by other land in the neighborhood which does not lie or abut upon said

railroad.'' With these specific instructions the 'jury could not have been misled by the general direction contained in the one criticised.

VII. As before stated, the damages were assessed by the commissioners at $2,580. This amount was paid into court for the landowners, and the railroad company at once took possession of the land and constructed its road upon it. Defendants filed exceptions to the award of the commissioners and on a trial in court the jury assessed the damages at $11,541.20 and judgment was rendered in favor of defendants for that amount. From this judgment plaintiff appealed. On that appeal the court held that defendants had the right to withdraw and use the money that had been paid into court for them, and as a consequence, the company should not thereafter be required to pay interest on that amount. *Railroad v. Fowler*, 113 Mo. 473. On a retrial of this case the court instructed the jury (in respect to the allowance of interest) in accordance with the ruling of the court on the former appeal. It had been previously held by this court that the provision of the statute (sec. 2736) requiring that the amount of damages awarded by the commissioners should be paid to the clerk of the court for the landowner, as a condition to be performed by the condemning company, before possession of the land could be taken, contemplated a mere deposit with the clerk, ''there to await the final determination of the suit.'' *Railroad v. Evans & Howard Fire Brick Co.*, 85 Mo. 328. This construction of the Constitution and statute remained undisturbed from 1884 until the former decision in this case in 1892. It appears that the amount awarded by the commissioners in this case was not withdrawn by the defendants, but remained on deposit to await the final determination of the proceeding. Defendants now insist that in failing to withdraw

the deposit they acted upon the construction given the Constitution in the *Howard-Evans* case, upon which they had a right to rely, and they should not be made to suffer the loss of interest on the deposits (to which they would have been entitled) by reason of the subsequent change of judicial construction.

The force of the argument of counsel must be conceded. The general rule undoubtedly is that "a judicial construction of a statute becomes a part of it, and as to rights which accrue afterward it should be adhered to for the protection of those rights. To divest them by a change of construction is to legislate retroactively." Sutherland, Stat. Const., sec. 319. The true rule is said to be, "to give a change of judicial construction in respect to a statute the same operation on contracts and existing contract rights, that would be given to a legislative amendment, that is to say, make it prospective but not retroactive." *Douglass v. The County of Pike*, 101 U. S. 677. See, also, *Farrior v. New England Co.*, 92 Ala. 178, and cases cited. But in the *Howard-Evans* case the statute was not construed in respect to the right of the landowner to interest on the money paid into court. That question was not before the court and was not directly passed upon. The only question really involved and decided was, whether or not an appeal by the condemning company operated as a *supersedeas* to prevent the payment to the landowner of the money deposited in court. We do not think the rule above stated in respect to the effect of a judicial construction of a statute, upon rights acquired under it, should be applied to constructions that can at most be implied from something that was actually decided. In order to give effect to the rule, the construction of the statute should have been directly involved in the case decided. "The maxim of *stare decisis* applies only to decisions on points arising

and decided in causes." Suth. Const. Stat., sec. 320. Since the former decision in this case, it has been held that if the landowner does not withdraw the deposit, he is entitled to the interest the money actually earns while in the custody of the court. *Railroad v. Clark*, 121 Mo. 187; *Snyder v. Cowan*, 120 Mo. 389; *Railroad v. Eubanks*, 130 Mo. 272. These decisions are inconsistent with the position of defendants in this case, for if the landowner was entitled to recover from the railway company interest on the award of the commissioners while the money was on deposit, he could not be entitled also to the interest earned on the money deposited. The assumption of counsel that in the *Evans-Howard* case the statute was so construed as to give the landowner interest on the money deposited, is not correct. It is neither so decided expressly or by necessary implication. According to that decision the money is deposited, not as compensation to the landowner, but as security that compensation will be paid when ascertained in subsequent proceedings. It can not be implied from that decision that the condemning company should pay interest on its own money deposited merely as security. We are of the opinion that the court properly instructed the jury on the question of the allowance of interest.

VII. Defendants object to instruction 3, which is as follows: "3. The jury are instructed that in regard to the evidence before you of experts and others concerning the value of the land taken by the railroad company, and the actual damage, if any, done to the defendant's land, you are not bound by the testimony of such witnesses, but you may apply your own judgment and knowledge as to such values and damages, in arriving at your verdict in connection with the testimony offered in this case at the trial." Instructions

St. L., O. H. & C. R'y Co. v. Fowler.

substantially the same were approved in the cases of *Kansas City v. Butterfield*, 89 Mo. 648; *St. Louis v. Ranken*, 95 Mo. 192; *Hull v. St. Louis*, 138 Mo. 618. We see no necessity for reconsidering the question.

After a rehearing and full consideration, we are of the opinion that the case was fairly tried according to well settled principles and that the judgment should be affirmed, which is ordered.   BARCLAY, C. J., ROBINSON and BRACE, JJ., concur.