ARNOLD v. SCHARBAUER et al.

(Circuit Court, W. D. Missouri, W. D.   November 24, 1902.)

No. 2,596.

1. CONTRACTS—CONTEMPORANEOUS WRITTEN AND ORAL AGREEMENTS—CONFLICT
    IN PROVISIONS.
      A written contract which purports on its face to be complete cannot
    be varied or added to by a prior or contemporaneous parol agreement,
    in the absence of fraud or mistake, and especially where the written
    contract contained stipulations for the performance of duties and the
    assumption of obligations by a party which is not bound by the alleged
    agreement sought to be substituted.

2. SAME—MODIFICATION AS TO PARTIES—CONSIDERATION.
      Where a written contract purporting to be between two parties on
    each side failed because of the refusal of one of the parties, upon whom
    obligations were imposed, to execute the same, a subsequent parol
    agreement by the parties, who were entitled to the benefit of such
    obligations, that the contract should stand with such party omitted, to
    be binding on them must rest upon some new and independent considera-
    tion.

Action for Breach of Contract.   On demurrer to amended petition.

Ward & Hadley, for plaintiff.

Lathrop, Morrow, Fox & Moore and Capps & Cantey, for defend-
ants.

PHILIPS, District Judge.   The original petition in this case count-
ed upon the written contract set out in the amended petition.   A
demurrer thereto was sustained for the reasons assigned in the opin-
ion of the court (see Arnold v. Scharbauer [C. C.] 116 Fed. 492),
which sets out in full the written contract in question.   The demur-
rer to that petition was sustained on the grounds, inter alia, that the
Western Cattle Brokerage Company, which purported to be a party
to the contract equally with Arnold, had not executed the contract,
and, as it stipulated for services which were to be rendered by one
or the other of them, it did not become a completed contract enforce-
able against the first parties at the suit of one of the parties of the
second part; and for the further reason that the contract contem-
plated certain obligations to be assumed by said Western Cattle
Brokerage Company, as well as certain liabilities for which the par-
ties of the first part would have had a right to look to the said com-
pany in the event of a breach of the contract; and for the further
reason that the contract did not express on its face any consideration
to the parties of the first part for transferring their land to the
corporation to be created, to represent the stock thereof to be sold
by the parties of the second part.   The plaintiff in his amended peti-
tion seeks to avoid the infirmities of the written contract by setting
up that prior to the reduction of the contract to writing the plaintiff
and defendants had an oral agreement to the effect as follows:

"That defendants should organize, as speedily as possible, a corporation
under the laws of the state of Texas, to be known as the Pennsylvania &

¶ 2. See Contracts, vol. 11, Cent. Dig. § 1119.

Texas Oil Company, with a capital stock of one million five hundred thousand dollars ($1,500,000.00), whose offices should be in Kansas City, Missouri, and Beaumont, Texas, and the par value of whose stock should be ten cents (10 cents) and one dollar ($1.00) per share. It was also agreed that the defendants should furnish one representative man, in addition to themselves, as incorporators of said oil company, ten or eleven in number, at Kansas City and other eastern points, and upon the organization of said oil company defendants should convey to said oil company the lands hereinafter described, and on conveying said land to said oil company defendants were to become the owners of all the shares of capital stock of said oil company. It was further agreed that the defendants should furnish one hundred thousand dollars ($100,000) of the capital stock of said oil company, to be disposed of among the directors and shareholders of the said oil company, and should also furnish ten thousand dollars ($10,000.00) for newspaper and other advertisements, and the defendants should bear the expense of literature, stamps, and other necessary expenses. It was also agreed by plaintiff and defendants that said Western Cattle Brokerage Company or plaintiff should have the exclusive sale of said shares of stock, and for services in making an effort to sell said stock said Western Cattle Brokerage Company or plaintiff should receive ten (10) per cent. of the capital stock of said corporation, and for actually making sales of said stock should receive ten (10) per cent. of the proceeds of said sales, as a brokerage; and that said Western Cattle Brokerage Company or plaintiff should furnish an office in a centrally located building in Kansas City, Missouri, and should bear the expense of bookkeepers, stenographers, and assistant; and that while said brokerage company or plaintiff were engaged in trying to sell and in selling said stock said brokerage company or plaintiff were not to handle any other oil stock. It was further agreed by plaintiff and defendants that defendants might take said oil stock off the market at any time, on paying said brokerage company or plaintiff a reasonable compensation for services, and that the proceeds of sale of said defendants' stock should be deposited to the credit of said Pennsylvania & Texas Oil Company in a bank designated by defendants."

It is then alleged that on the same day plaintiff and defendants partially reduced said agreement to writing, and executed the same. The petition sets out, in hæc verba, the written agreement as stated in the former opinion herein. This is followed by giving a description of the lands which were intended to be included, but not described, in the written agreement, with the further statement that, at the time said oral agreement was made and partially reduced to writing and executed by plaintiff and defendants, plaintiff and defendants did not know whether the directors of the said Western Cattle Brokerage Company would authorize it to become a party to said oral agreement and writing "hereinbefore set out and execute the same; that thereafter, on the ―――― day of April, 1901, the directors of said company refused to authorize said company to become a party to said oral agreement and writing, or to execute the same, and that the plaintiff and defendants were advised thereof; "that thereupon and thereafter, on the ―――― day of April, 1901, plaintiff and defendants, with such knowledge, agreed to adopt and did actually adopt as their agreement said oral agreement and said writing, which plaintiff and defendants had already executed; and plaintiff and defendants entered upon the performance of said terms and conditions of said oral agreement and said writing adopted by them as their agreement, and plaintiff duly performed all the conditions of said agreement to be performed by him, but defendants failed to ful-

ly perform their part of said oral agreement and writing, to the damage of plaintiff," etc.

There is no rule of law better established than that all precedent as well as contemporaneous negotiations and understandings in relation to a contract afterwards reduced to writing (in the absence of mistake, accident, or fraud, as understood in equity jurisprudence) are conclusively presumed to have been completely swallowed up, merged, and expressed in the written instrument, and that thenceforth the written instrument becomes the sole expression of the mind and agreement of the contracting parties. In other words, it is conclusively presumed that the entire engagement and the extent and manner of their undertaking were reduced to writing, and therefore evidence of any understanding and concurrence of minds of the parties in their antecedent negotiations respecting the contract resting in parol is wholly inadmissible to add to, take from, or in any wise vary the obligations of the parties as expressed in the written instrument. This rule is rigidly adhered to by the supreme court of this state. Woodward v. McGaugh, 8 Mo. 162; Walker v. Engler, 30 Mo. 130; State v. Hoshaw, 98 Mo. 358, 11 S. W. 759; Morgan v. Porter, 103 Mo. 135, 15 S. W. 289; Tracy v. Iron Works Co., 104 Mo. 193, 16 S. W. 203; Boyd v. Paul, 125 Mo. 9, 28 S. W. 171.

It is not alleged in the petition that there was any mistake or fraud in the procurement of the written contract, nor is it sought to reform or recast it on any of the grounds recognized in equity for the reformation of written contracts. On the contrary, the action is purely one at law for the enforcement of a contract made.

It will be observed by a reference to the opinion of this court on the original demurrer that the court, speaking of the written contract, said:

"While it imposes the obligations and undertakings on the part of the parties of the second part on James H. Arnold or the Western Cattle Brokerage Company, the defendants, by its terms, are as much entitled to have the Western Cattle Brokerage Company bound as James H. Arnold. By the express terms of the contract, the obligation to put the stock on the market after the creation of the corporation, and to exploit and sell it, is imposed upon the Western Cattle Brokerage Company as much as it is on James H. Arnold. It is a reasonable inference that in agreeing to organize the corporation at their expense and trouble, and investing it with the title to their 500 acres of land, the inducement of the defendants thereto was that they should have the right to the services, influence, and responsibility of the organized body of the Western Cattle Brokerage Company as much so as that of Mr. Arnold. In other words, they were to have the personal responsibility of either, so that, in case of default on the part of the parties of the second part, they could look for indemnity to both Arnold and the brokerage company. * * * The defendants never came to a compact alone with Arnold in the proposed enterprise. * * * The contract stipulates that 'it is agreed and understood that the said parties of the second part are not to handle any other oil stock during the time they are handling the stock of said parties of the first part.' * * * The contract, as drawn, not only entitled the defendants to the services of this brokerage company in disposing of the stock, based upon the 500 acres of land to be conveyed by them to the corporation, but the additional right and advantage of having the brokerage company refrain from handling any other oil stock during the obligated service of the parties of the second part to the defendants."

The court, further on, commenting upon the provision of the written contract allowing James H. Arnold alone a reasonable compensation in addition to the brokerage of 10 per cent. in the event the parties of the first part took the stock off the market, and that the contract might be changed or altered if acceded to alone by Arnold, said that for aught it knew these "were the reasons why the contract was not executed by the Western Cattle Brokerage Company." It is now alleged in the amended petition that the Western Cattle Brokerage Company did refuse, when the contract was presented to it, to enter into the agreement.

It is observable that the antecedent verbal agreement, set up in the amended petition, is quite different in several material respects from the written agreement. The written agreement obligated the parties of the second part—that is, John Scharbauer and John T. McElroy—"to pay ten per cent. on the capital stock as a brokerage, and ten per cent. to Jas. H. Arnold for his services"; whereas the oral agreement pleaded in the amended petition provides that the Western Cattle Brokerage Company or the plaintiff were to have "for services in making an effort to sell said stock ten per cent. of the capital stock of said corporation, and for actually making sales of said stock should receive ten per cent. of the proceeds of said sales, as a brokerage." The written contract recites that "it is agreed and understood that the said parties of the second part [that is, Arnold and the brokerage company] are not to handle any other oil stock during the time they were handling the stock of the said parties of the first part." The antecedent oral agreement, as alleged in the amended petition, is "that, while said brokerage company and the plaintiff were engaged in trying to sell and in selling said stock, said brokerage company or the plaintiff were not to handle any other oil stock"; thus showing that the oral agreement now sought to be enforced limits the obligation alternatively,—"while said brokerage company or the plaintiff were engaged in trying to sell or in selling said stock" they were not to handle any other oil stock. Quite different is the obligation expressed in the written contract that said parties of the second part are not to handle any other oil stock during the time they were handling the stock of said parties of the first part and that expressed in the antecedent oral agreement that they were not to handle any other oil stock while engaged in trying to sell and in selling said stock. The clear meaning of the written contract was that during the period of time this stock was on the market, being handled by them, they were not to have on their list any other stock for sale; whereas, the oral agreement only required them to refrain from handling any other oil stock while they were trying to sell, and in selling said stock. Under this latter arrangement, Arnold and the brokerage company, when not actually trying to sell, or engaged in selling, the stock of the oil company, could have consistently handled and sold other stock.

The written contract provided "that said Jas. H. Arnold or the Western Cattle Brokerage Company is to have the exclusive sale of said stock, but if, for any reason, the said McElroy and Scharbauer desire to take the stock off the market, they shall have the right

to do so by paying said Jas. H. Arnold a reasonable compensation for his services"; whereas, the antecedent oral agreement in this respect provided "that the defendants might take said oil stock off the market at any time on paying said brokerage company or plaintiff a reasonable compensation for services,"—thus attempting to avoid the criticism made in the opinion of the court on the written contract that it provided for paying Arnold alone for such compensation.

The learned counsel for plaintiff undertakes to escape from this dilemma by two contentions: (1) That only a part of the actual agreement between the parties was reduced to writing; and (2) that on the failure of the brokerage company to sign the written contract it was agreed between the plaintiff and defendants that they should fall back on, and go ahead with, the alleged antecedent oral agreement. It is true that, where a written contract does not purport on its face to express the entire contract, parol evidence may be admitted to supply the unexpressed parts, except in those instances where the nature or character of the contract is required by the statute of frauds to be fully expressed in writing. It will be found, on examination of the reported cases, where this rule has been applied, that it was in respect of some memorandum which on its face indicated that some essential part or detail was omitted, rendering it necessary to resort to parol to supply the necessary whole. 1 Greenl. Ev. par. 284a; Rollins v. Claybrook, 22 Mo. 407; State v. Tillery, 41 Mo. 389–391; O'Neil v. Crain, 67 Mo. 251, 252; Lash v. Parlin, 78 Mo. 391; Ringer v. Holtzclaw, 112 Mo. 523, 20 S. W. 800.

The rule has no application to the instance at bar where the written instrument on its face purports to be the deliberate expression of the whole contract between the parties. And certainly the rule does not authorize the substitution of an antecedent convention at variance with the obligations, liabilities, and responsibilities imposed by the written expression, which is between two parties on one side and two parties on the other, whereas the contract sought to be established is one between two parties on one side and only one party on the other.

As the written contract, which entitled the defendants to certain services, undertakings, and responsibilities of both Arnold and the brokerage company, as shown in the first opinion herein, failed, as the amended petition now alleges, by reason of the refusal of the brokerage company to execute it, the second contention, that thereupon an oral agreement with Arnold alone was substituted, must fail, for the obvious reason that no new consideration is alleged to support it. If it were conceded to the plaintiff that the written contract was such as could be waived by a subsequent oral agreement, such subsequent agreement being different in character and less advantageous to the defendants, and more advantageous to the plaintiff than the written one, the rule of law requiring some new consideration to support it has special application. This rule is tersely expressed by Judge Wagner, in Bunce v. Beck, 43 Mo. 280: "Parties may by subsequent parol agreement, upon sufficient consideration, change the mode of payment or other terms of their written contract, or they

may discard it altogether." So in Fisher v. Stevens, 143 Mo. 191, 44 S. W. 771, the court said: "A promissory note, like other chattels, may, by subsequent agreement by parol, be the subject-matter of contract, but any and all contracts with respect thereto, in order to be binding, must be supported by an independent consideration."

The written contract between these parties, for instance, provided that "it is the purpose of this contract and understanding that all the parties to this contract are to act in good faith, each with the other; and it is also understood that this contract cannot be changed or altered unless it is done in writing, signed by Jno. T. McElroy, Jno. Scharbaur, and Jas. H. Arnold, and attached hereto and made a part of this instrument,"—thus showing that it was in the mind of the parties when they came to consummate their agreement by reducing it to writing in order to avoid the too frequent contention of one or the other of the parties, when the contract is sought to be enforced, that it had been changed or altered by oral agreement between the parties, to cut such contention off by positively providing that unless such change or alteration should be reduced to writing and signed by the designated parties it should not avail. Most certainly when the plaintiff is now, as his amended petition alleges, seeking to rely both upon the written contract and an oral agreement, he cannot escape the just requirement of the law in seeking to omit from the transaction the brokerage company as one of the parties to whose responsibility, obligation, and liability the defendants were entitled to look for the faithful performance of the agreement in case of default of Arnold, without alleging and proving some new consideration moving from Arnold to the defendants to support the alleged substituted oral agreement. Independent of the contention of defendant's counsel that the contract sought to be enforced by the amended petition is in contravention of the statute of frauds, I am of the opinion that the demurrer is well taken.