STATE of Missouri, ex rel. MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Plaintiff-Appellant,

v.

Donald E. ROTH, et al., Exceptions of Donald E. Roth, et al., Defendants-Respondents.

No. 47492.

Missouri Court of Appeals, Eastern District, Division One.

March 12, 1985.

See also, Mo.App., —— S.W.2d ——.

John Wheelan Maupin, Kirkwood, for plaintiff-appellant.

Samuel C. Ebling, St. Louis, for defendants-respondents.

KAROHL, Judge.

This is a 1976 highway condemnation case involving 83.6 acres[1] of industrial zoned property owned by defendant-respondent Donald E. Roth and others [Roth], in St. Louis County. The commissioners awarded defendants $4,220,000. Both sides filed exceptions. The 1983 circuit court jury trial resulted in a verdict and judgment for Roth in the sum of $3,250,-000. Plaintiff-condemnor moved timely for a new trial and now appeals the amount of the judgment.

Roth purchased the property in 1968. It is a tract containing 83.6 acres. The land taken for the highway right-of-way was 24.5 acres. Part of the remaining acreage is landlocked by the taking (44.3 acres) and part is left with irregular boundaries which detracts from its value.

At the time of the agreed date of taking, October 13, 1976, the land had been surveyed, platted and zoned for industrial development. Roth had completed engineering studies and drawings. Survey stakings were performed. Over one million cubic yards of earth had been moved. Storm sewers and railways had been realigned; street grading and subgrading were completed. Trunk sewers were located on the property and the metropolitan sewer district had approved plans for extensions of laterals from the main sewer trunks to individual subdivision lots. Forty-six lots had been planned, but streets and access to the main thoroughfare had not been constructed. The property was accessible to utilities. Roth's expert witnesses viewed the land as being neither a completed subdivision nor a piece of unimproved property, but "somewhere in between," closer to being developed. The State Highway Commission's experts characterized the land as "raw land" upon which no improvements had been made.

Property owner Roth testified that he was in the real estate development business and purchased the eighty-four acre tract in 1968. He described the property in 1968 as very rough and hilly with a lot of big trees. Portions of the land were undermined. Prior to acquiring the land, Roth had studies done on the property by a professor of Washington University, a compaction engineer and soil engineer. Appraisals were conducted by two different appraising firms. Roth purchased the land for $390,000, which included a $100,000 finder's fee. Surveys were performed, engineers hired, preliminary through final plans drawn, and aerial photographs taken. The property was staked, creeks were drained and drainage channels realigned. The property was zoned industrial and the preliminary plats for development were approved by the cities of Bel-Ridge and St. John, where the property was located. Roth's company rented equipment to clear and grade the land. Roth employed and paid construction companies and other professionals to help with the work. Roth contracted to sell two of the forty-six proposed lots for $1.67 per square foot with a condition that a street be put in. The street was never constructed and the two lots were subsequently returned to Roth. Other lots were leased to brick contractors in 1969.

As the owner of the property and experienced real estate developer, Roth gave an opinion as to the fair market value of the property prior to the taking of $5,458,838, using $1.50 per square foot of land area. His opinion of the value after the taking was $93,738, leaving total damages of $5,375,100, at the time of the taking in 1976.

Jessie F. Colvin, a site development engineer; Eugene E. Brucher, a consulting engineer and foundation expert; Ronald Behle, a builder and real estate broker; and Ronnie D. Bales, registered surveyor, each testified as to their work which they performed in the development of Roth's property.

Roth called three expert witnesses to testify to the value of the property taken.

---

1. Square feet and acreage are used in property descriptions throughout the record. Variances are minimal and immaterial to the issues on appeal.

They each used comparable land sales to support their opinions as to the damages. The first witness testified that damages for the taking were $4,169,800 [$1.32 per square foot]. His opinion was based on twelve comparable sales transactions involving lots which were all zoned for industrial use. They ranged in size from 11,700 to 112,000 square feet and were located within several miles of defendants' tract of land. Each lot was on a street, had sewers, was accessible to utilities, graded, and had no buildings. These lots were sold between 1972 and 1978 for amounts ranging from 73¢ to $2.00 per square foot of land area.

Roth's second expert testified that damages for the taking were $4,372,300 [$1.25 per square foot]. His opinion was based on four tracts of land, similarly located, which he described as "raw land" ranging in size from twenty-four to eighty-seven acres. The tracts were unplatted, ungraded and undeveloped, and sold for 31¢ to 41¢ per square foot of land area, between 1968 and 1973. These properties were subsequently developed and zoned industrial. He also considered smaller parcels within these tracts, ranging in size from 35,283 square feet to 3.1 acres, that were sold after they had been developed. The improvements on these smaller tracts included grading, streets, sewers, and accessibility to utilities. These sales were made between 1968 and 1978 and the lots sold for amounts ranging from $1.30 to $2.12 per square foot of land area.

The third expert testified that the damages for the taking were $4,360,820 [$1.39 per square foot]. His opinion was based on seven comparable sales involving tracts of land, in the same locality, industrially zoned, and with similar amenities. The years involved were 1970 to 1978 and these tracts were purchased for amounts ranging from $1.63 to $3.00 per square foot of land area.

The three experts based their opinions of damages for the taking on the same 24.5 acre tract. They differed as to the value of the resulting landlocked and remaining

tracts which explains the expert's net figures for damages. Their opinions were not based solely on square foot values.

Plaintiff objected to evidence of the sale prices of comparables utilized by Roth's experts' (except for the four tracts purchased as "raw land" and mentioned by the second expert) arguing those sales were irrelevant and immaterial because of the great disparity in size and amenities when compared to defendants' property. In plaintiff's view they were not probative because they were incomparable. Every objection in this regard was overruled.

Plaintiff called two expert witnesses to testify as to comparable land sales and to give their opinions of defendants' damages for the taking. The first witness assessed damages for the taking at $344,085. This opinion was based on five sales transactions involving industrial zoned undeveloped tracts of land, similarly located, ranging in size from 29.25 to 133 acres. These sales occurred between 1970 and 1974 and the tracts were sold for amounts ranging from $5,623 to $15,000 per acre. Plaintiff's second witness testified that damages for the taking were $367,150. His opinion was based on six sales transactions only one of which was developed. The tracts were in the same locality and ranged in size from 24 to 133.72 acres. These purchases occurred between 1970 and 1974 and sold for $5,600 to $34,855 per acre. The purchase for $34,855 per acre was for an improved tract.

The Commission's sole point on appeal is as follows:

> The trial court erred by allowing into evidence in an abuse of its discretion 26 'comparable sales' because said sales were not relevant to the issues of this cause in that they were not as a matter of law comparable to the tract in condemnation due to the gross disparity in size and industrial amenities: these sales ranged in size from 0.27 acre to 5.99 acres and had developed street frontage and available utility services. The subject tract was approximately 84 acres,

without developed street frontage or available utility services.

■ We note that appellant's point on appeal is vague and confusing. If we view the point as being in compliance with Rule 84.04 requiring that appellant set forth wherein and why the trial court erred we are confined only to disparity as to size and the degree of industrial amenities of the comparables.[2] Further, plaintiff's point mixes a claim of error as a matter of law with a claim of error based upon abuse of discretion. The claim of error as a matter of law is valid only if Roth's experts relied upon comparable sales which had no probative value whatsoever. [i.e. the value of sales of oranges will not be probative of sales of apples]. *See St. Louis O.H. & C. Ry. Co. v. Fowler*, 142 Mo. 670, 44 S.W. 771 (Mo.1898). If we review the assignment of error in that posture we review the issue independently and reach our own conclusions upon the law. *See M.F.A. Mut. Ins. Co. v. Home Mut. Ins. Co.*, 629 S.W.2d 447 (Mo.App.1981).

■ As a matter of law we find that the twenty-six tracts used by Roth's experts were comparable to the condemned land. In *State ex rel. State Highway Commission v. Ankrom*, 588 S.W.2d 172 (Mo.App. 1979) the court held that comparable tracts of land, ranging in size from one to six acres, having access to public roads, were not comparable as a matter of law to the condemned land, a one-hundred acre farm tract served by a fifteen foot private road. *Id.* 44 S.W. at 173. In *Fowler* the court held that "[s]ales of small residence or business lots on improved streets would give the jury no assistance in estimating the value of a tract of twenty-four acres of unimproved land." *Id.* 44 S.W. at 773. The facts, however, are different in the present case. Plaintiff's land was neither raw land nor fully developed. It was zoned industrial as were the comparables. It was partially developed as were some of the comparables. Access, utilities and proximity to roads were not wholly different. We do not find error as a matter of law.

In the alternative plaintiff's point claims abuse of discretion which implies that the trial court was not bound by a rule of law but was free to permit the evidence of comparables that may have differed in size and degree of development unless such testimony could not help the jury in evaluating the experts' opinion of value or the opinions based in part on incomparables were not probative, worthless or misleading. In this light we review for abuse of discretion in the admission of evidence.

■ The admission of evidence of comparable sales rests largely in the discretion of the trial court and the trial court's judgment in the matter will not be disturbed except if manifestly abused. *State ex rel. State Highway Commission v. Wertz*, 478 S.W.2d 670, 677 (Mo.1972). That discretion is abused only when the trial court's ruling runs against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to show a lack of careful consideration and shock the sense of justice; if reasonable men can differ about the propriety of the action taken by the trial court, then the trial court did not abuse its discretion. *Kasper v. Helfrich*, 421 S.W.2d 66, 69 (Mo.App.1967).

To determine whether collateral sales are admissible as comparable sales we look to the landmark case of *In re Armory Site in Kansas City*, 282 S.W.2d 464 (Mo.1955) which governs.

> The importance of evidence of the sale price of other land depends upon the degree of nearness of the sale in point of time and the proximity of the property, of the similarity in location, and in the use to which the property may be adaptable. In determining the admissibility of evidence of this nature there necessarily must be considerable discretion on the part of the trial judge.

*Id.* at 473.

■ The dissimilarities of the comparable sales go to the weight to be given the evidence by the jury as opposed to the evidence's admissibility. *U.S. v. Becktold Co.*, 129 F.2d 473, 479 (8th Cir., 1942);

---

**2.** In *In re Armory Site in Kansas City*, 282 S.W.2d 464, 473 (Mo.1955) the Supreme Court recognized four factors in determining the relevance of comparables.

*State ex rel. State Highway Commission v. Koberna,* 396 S.W.2d 654, 662 (Mo.1965); *Nichols Eminent Domain,* 3rd Ed., Volume V, § 21.31[3].

The evidence is clear that the Roth property was not "raw land" but developed to the degree that the comparable sales used were similar and therefore admissible as evidence. *State ex rel. State Highway Commission v. Twin Lakes Golf Club, Inc.,* 470 S.W.2d 313, 315 (Mo.1971). Roth's experts were qualified as expert real estate appraisers without objection. They each described the method of comparable sales and made plain the similarities of and differences between the land sales used as comparables and Roth's land.

The uses to which the Roth property may be adapted, the point in time it was condemned and its location are plainly similar to that of the comparable sales. All were zoned for industrial use. Any dissimilarity goes to the weight of the evidence and not to its admissibility; the distinctions may be developed by cross-examination or otherwise. *See Koberna,* 396 S.W.2d at 662.

We affirm.

PUDLOWSKI, P.J., and GAERTNER, J., concur.

