STATE of Missouri, ex rel. MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Plaintiff/Appellant,

v.

ZEISER MOTORS, INC., et al., Exceptions of the Behlmann Properties Family Limited Partnership: Linda L. Behlmann a/k/a Linda Lee Behlmann, Managing General Partner and Limited Partner; Kenneth A. Behlmann, General Partner and Limited Partner; Brian D. Behlmann, Limited Partner; AND Daniel K. Behlmann, Limited Partner, Defendants/Respondents.

No. 70549.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 29, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 29, 1997.

Application to Transfer Denied
Aug. 19, 1997.

Paul R. Sterrett, Missouri Highway & Transportation Commission, Chesterfield, for plaintiff/appellant.

Thomas W. Wehrle, Robert H. Epstein, Don V. Kelly, Susman, Schermer, Rimmel & Shifrin, L.L.C., St. Louis, for defendants/respondents.

CRANE, Presiding Judge.

The Behlmann Properties Family Limited Partnership (the Partnership) owned a parcel of land with commercial buildings referred to as "Car City" which it used for car sales and other automotive businesses on the North Outer Road of Highway 70 between the Cave Springs and Mid Rivers Mall overpasses in St. Peters in St. Charles County, Missouri. On September 21, 1992 the Missouri Highway and Transportation Commission (the Commission) permanently took 59,276 square feet of this property for the construction of Highway 370. The court appointed Commissioners. Both parties filed exceptions to the Commissioners' award. After a trial on those exceptions, the jury awarded the Partnership $592,000.00 in damages. The Commission appeals, asserting error in the admission of evidence that Ken Behlmann previously sold another parcel of property to the Commission for $8.00 a square foot. We affirm.

Linda and Ken Behlmann are each partners in the Partnership. Linda Behlmann manages the Partnership and its properties. Ken Behlmann is president of Behlmann Pontiac/GMC Truck, Inc. and Behlmann Pre–Owned Centers, Inc. The Partnership purchased the "Car City" property in July, 1986 for $190,000.00. It had the property rezoned from agricultural to C–3 commercial. It also made improvements to the land and the existing structures including: laying asphalt; fencing the property; remodeling the inside and outside of the farmhouse to make offices; and remodeling the storage building by adding a concrete floor, restrooms, insulation, heaters and a sewer system designed to handle used oil and gas. The Partnership paid over $100,000.00 for these improvements. Martin Tipsworth and Dennis Grubs entered into a lease with the Partnership on October 1, 1989 which included an option to purchase the property for $595,000.00. Linda Behlmann valued the property at $900,000.00 as of September 21, 1992, the date of the taking.

Ralph Prinster, a real estate appraiser, testified on behalf of the Partnership. Based on several valuation methods, he valued the property at $650,000.00 as of September 21, 1992. He valued the land at $5.32 per square foot.

John Neff, a real estate appraiser, testified on behalf of the Commission. Using several valuation methods, he valued the property at $382,000.00. He valued the land alone at $3.00 per square foot.

Ken Behlmann valued the property at $900,000.00 at the time of taking, based on the improvements, renovations, location, and

a land value of $8.00 per square foot. Behlmann testified that he had previously sold property referred to as the "old Terry Fisher building" to the Highway Commission for $8.00 a square foot in 1994.

For its sole point on appeal, the Commission asserts that the trial court erred in allowing Ken Behlmann to testify to the Commission's purchase of the Terry Fisher property for $8.00 a square foot. The Commission argues that it had a fixed purpose to acquire the Terry Fisher property for construction of Route 370, that testimony regarding a sale made under the threat of condemnation is inadmissible, and that the Commission was prejudiced because the testimony implied that the Commission's appraiser's testimony was artificially low. The Partnership responds that the Commission did not meet its burden of showing it had a fixed purpose to acquire the subject property or that the Commission threatened Behlmann with condemnation.

■■■ The admission of evidence of comparable sales in a condemnation case is within the sound discretion of the trial court. We will not disturb the trial court's exercise of discretion unless it is manifestly abused. *State ex rel. Mo. Hwy. & Transp. v. Roth,* 687 S.W.2d 662, 666 (Mo.App.1985). That discretion is abused only when the trial court's ruling runs against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to show a lack of careful consideration and shock the sense of justice. *Id.* If reasonable persons can differ about the action taken by the trial court, it did not abuse its discretion. *Id.*

■■■ The sale price of property similarly situated to that involved in a condemnation proceeding is admissible to aid the jury in determining the compensation to which the landowner is entitled for the taking of his property. *State v. Bruening,* 326 S.W.2d 305, 312–13 (Mo.1959); *Highway and Transp. Com'n v. Vitt,* 785 S.W.2d 708, 713 (Mo.App.1990). The party seeking to introduce evidence of such a sale has the burden to show that the sale was voluntary. *Vitt,* 785 S.W.2d at 713. However, this burden is discharged *prima facie* by the aid of a presumption that the price of land sold was in fact fixed freely and not under compulsion. *Id.* Thus, the burden of coming forward with evidence to demonstrate that a particular sale was involuntary shifts to the opposing party. *Id.* at 713–14.

■■■ The price of property sold to a purchaser with the power of eminent domain is admissible *except* when either 1) the condemning authority has a fixed purpose to institute condemnation proceedings if it cannot acquire land by purchase at a satisfactory price, *or* 2) that the condemnor threatened the seller with condemnation if a satisfactory purchase price was not agreed upon. *Board of Public Bldgs. v. GMT Corp.,* 580 S.W.2d 519, 524 (Mo.App.1979) (citing *Bruening,* 326 S.W.2d at 314); *Vitt,* 785 S.W.2d at 714.

■■■ The Commission argues that an affidavit executed by John Roth, an employee of the Missouri Highway and Transportation Department, shows that the Commission had a fixed purpose to institute condemnation proceedings if a settlement was not reached. In his affidavit Roth averred that he was responsible for supervising the design of Highway 370 and the widening of Interstate 70 in St. Charles County, Missouri. He attested:

> Further, there was a fixed purpose to acquire the necessary right of way from the western portion of defendants' property at the time the right of way was acquired from the eastern portion of defendant's property.

■■■ The Commission attached this affidavit as *Exhibit C* to its *Motion in Limine* to exclude testimony regarding Ken Behlmann's previous sale of land to the Commission. The court denied this motion. The Commission referred to this affidavit when it objected at trial. However, Roth did not testify at trial and his affidavit was not offered into evidence. Without the agreement of the parties, an affidavit may not be considered as evidence at trial. *Gilboe v. Doerflinger Realty Co.,* 614 S.W.2d 4, 6–7 (Mo.App.1981).

■■■ The Commission next argues that it proved that it threatened the seller with condemnation if a satisfactory purchase price was not met. It first asserts that the trial

testimony of William Endrizzi, a right of way negotiator for the Commission, that he told Ken Behlmann that the Commission was "preparing the case for condemnation" constituted a threat of condemnation.

At the time the objection was made, Endrizzi had not testified. Counsel for the Commission advised the court that Endrizzi would testify the next day that the settlement was made with the threat of condemnation. The Partnership's attorney responded that the evidence would be that the settlement was negotiated and condemnation was not mentioned. The trial court overruled the objection. The next day Endrizzi testified: "At that time, I advised him that by the project, we were preparing for condemnation, but we would continue to negotiate with him." Endrizzi admitted that he did not mention condemnation in his negotiations with Thomas Wehrle, the partnership's attorney. At the close of defendant's case, the Commission moved for reconsideration of its objection to Behlmann's testimony about the Commission's purchase of the Terry Fisher property and asked that it be stricken. In response, the Partnership's attorney argued that the testimony in the record did not establish a sale under threat of condemnation and advised the court that Ken Behlmann would testify on rebuttal that Endrizzi never mentioned the word condemnation to him. The trial court overruled the motion. Subsequently, Ken Behlmann testified on rebuttal that Endrizzi never mentioned the word condemnation. It was well within the trial court's discretion to 1) accept Endrizzi's testimony that he told Behlmann, "we were preparing for condemnation," but determine that, under the circumstances it was made, the statement did not constitute a threat of condemnation if a satisfactory purchase price was not agreed on or 2) make a credibility determination that Endrizzi did not mention condemnation to Behlmann.

The Commission next argues that it satisfied the "threatened with condemnation" prong because both Ken Behlmann and Wehrle were aware that condemnation would follow had the parties not reached an agreeable price. Ken Behlmann testified that, had he and the Commission not agreed on a price, he assumed that "it would have been the same system we are going through now." The Commission also argues that Wehrle knew that condemnation would follow since Wehrle is an "experienced condemnation attorney." However, to meet this prong the Commission has the burden of showing that it actually communicated a threat of condemnation to the seller. *Bruening*, 326 S.W.2d at 314. That the sellers may have concluded from the circumstances that a condemnation would follow does not satisfy this requirement.

Since the Commission did not meet its burden of showing that it had a fixed purpose in acquiring the land or that it had threatened Behlmann with condemnation, it did not prove that the previous sale was made under threat of condemnation. Therefore, the Commission did not rebut the presumption that the previous sale was voluntary and the trial court did not abuse its discretion in admitting Ken Behlmann's testimony about the "Terry Fisher" sale as a comparable sale for determining the market price of the "Car City" property.

The judgment of the trial court is affirmed.

GERALD M. SMITH and PUDLOWSKI, JJ., concur.