**STATE of Missouri, ex rel. STATE HIGHWAY COMMISSION OF MISSOURI, Plaintiff-Respondent,**

v.

**PFIZER, INC., Defendant-Appellant.**

No. 45954.

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 16, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 4, 1983.

Application to Transfer Denied
Nov. 22, 1983.

Gary A. Growe, St. Louis, for defendant-appellant.

John W. Koenig, Missouri Hwy. Commission, Sikeston, for plaintiff-respondent.

KAROHL, Judge.

Plaintiff-respondent State Highway Commission condemned forty-four acres in Washington County for the relocation of a highway right of way. Defendant-appellant Pfizer, Inc. owned only the mineral rights on the condemned acreage. The Commissioners awarded defendant $60,000 and plaintiff filed exceptions. Defendant appeals from the jury verdict of $12,000.

On appeal defendant argues: (1) the trial court erred in admitting plaintiff's evidence of value since plaintiff's appraisers improperly calculated the loss; and (2) the trial court should have admitted plaintiff's proffered testimony of an unaccepted offer to purchase the right to mine the condemned acreage. We reverse and remand.

On September 14, 1978, plaintiff brought a condemnation petition seeking to exercise its eminent domain powers over forty-four acres located in a tract of land known as the "Kingston tract." In 1963, defendant had obtained by deed, a fee interest in all barite, tiff, chat and lead recovered incidental to mining barite located in and under the Kingston tract. Defendant had an absolute right to recover and remove all the minerals by whatever mining method would be commercially feasible, to destroy the surface of the land in recovery of minerals, and to maintain and construct facilities for processing barite. The only issue at trial was the loss to defendant's fee interest in the mineral rights, not the loss to the fee owner of the surface land.

Defendant had actively mined barite within the Kingston tract until 1975. On December 10, 1979, defendant leased the exclusive right to mine barite within the Kingston tract to DeSoto Mining Company. The leasehold estate included the forty-four acres condemned by plaintiff. Under the lease, DeSoto agreed to pay defendant $5.04 per ton for each ton of recoverable barite mined.

Defendant first contends that plaintiff's experts used an incorrect method of computing defendant's damages and that such evidence should not have been admitted. Plaintiff's experts attempted to value de-fendant's mineral interest by determining how the presence of barite enhanced the per acre value of the entire Kingston tract, over 6,000 acres, and applying that value to the subject forty-four acres. One appraiser attempted to use a comparable sales method, locating one sale of land in Washington County containing barite. Using that sale, the appraiser estimated that the mineral interest was $150 per acre. The purported comparable sale, however, was a purchase of the entire fee, not just the mineral rights. He did not know the extent of the mineral deposits on the comparable or condemned property, but valued defendant's interest in the entire Kingston tract before and after the condemnation, arriving at a $10,000 loss.

Plaintiff's other appraiser also valued defendant's interest in the entire Kingston tract before and after the taking. He stated that defendant's interest in the entire tract was $275 per acre. Multiplying that amount by the number of acres taken, forty-four, he arrived at a $12,000 loss. The appraiser considered himself unqualified to value defendant's interest in the barite.

Plaintiff also called a geologist who testified that there were 1,182 tons of barite located in the forty-four acres taken for the highway right of way. Defendant's witness criticized the geologist's methods for estimating the amount of barite.

Defendant argues that plaintiff's evidence attempted to measure how the presence of barite enhanced the value of the entire Kingston tract, when the proper measure of damages should have been the value of the barite in place on the date of taking. Defendant's expert, Russell Dessieux, attempted to make such a valuation. A geological engineer employed by DeSoto Mining Company, Dessieux had previously worked with Pfizer and had been directly involved with prospecting and mining barite in the Kingston tract before the condemnation. Prior to plaintiff's construction of the new right of way, DeSoto had conducted an exploration to determine the amount of recoverable barite that would be destroyed by the state's taking. From those

tests DeSoto projected the presence of 13,544 tons of recoverable barite within the boundary of the highway right of way, and 2,722 tons within the areas immediately adjacent to the right of way that would be lost for mining purposes. DeSoto calculated a total loss of 16,226 tons.

Dessieux then testified to the market demand for barite, its uses, and the retail value of barite at the date of taking. In calculating the value of the barite in place, Dessieux considered the market value of the ore, the topography of the Kingston tract, ability to mine the ore, location within the right of way, overburden, costs of reclamation, and distance from the washer plant. He arrived at a value in place of about $5.50 per ton, and total damages of approximately $80,000.

The general rule is that mineral deposits are not to be valued separately, but only as they enhance the value of the land. This rule only applies, however where there is no severance of the land into separate estates of surface and mineral rights. *State ex rel. State Highway Commission v. Foeller,* 396 S.W.2d 714, 719 (Mo.1965); *State ex rel. Milchem, Inc. v. Third Judicial District Court,* 84 Nev. 541, 445 P.2d 148, 152 (1968); *Hultberg v. Hjelle,* 286 N.W.2d 448, 457 (N.D.1979). Where there is a mineral deed, the subsurface rights create a separate, distinct interest apart from the surface rights. *Foeller,* 396 S.W.2d at 719. The issue at trial therefore is the value of the minerals in place. *Id.; State Highway Commission v. Fegin,* 2 Mich.App. 698, 141 N.W.2d 312, 315 (1966). *See 4 Nichols' The Law of Eminent Domain* § 13.22[1] (rev. 3d ed. 1981).

The testimony of plaintiff's appraisers had no relevant probative value, as they made no effort to make any calculations of the amount of minerals in the right of way or their value. *See United States v. 237,500 Acres of Land,* 236 F.Supp. 44, 50 (S.D.Cal. 1964), *aff'd sub nom. United States v. American Pumice Co.,* 404 F.2d 336 (9th Cir.1968). It was improper to limit the value of the minerals to the amount their value would add to the land. *Foeller,* 396 S.W.2d at 722.

In estimating the value of the minerals in place, the evidence should reflect the fair market value—what a willing buyer would pay and what a willing seller would take for the minerals in place. *United States v. Sowards,* 370 F.2d 87, 90 (10th Cir.1966). Further, opinions as to the value of minerals in place can be made in conjunction with comparable sales, *Belott v. State,* 26 A.D.2d 749, 272 N.Y.S.2d 49, 52 (1966), but need not be. *Foeller,* 396 S.W.2d at 719; *United States v. 287.89 Acres of Land,* 241 F.Supp. 456, 462 (W.D. Pa.1965). The owner is entitled to the market value of the mineral for the best use to which it is adapted. *Id.* at 463. Although royalty payments are a factor bearing on market value, defendant is entitled to show other factors bearing upon the market value of the mineral for its highest and best use. *Foeller,* 396 S.W.2d at 722.

We recognize that some speculation is inherent in the valuation of all resource property, but if the quality of the proof of value follows the custom of the industry, is the best available, and is sufficient to allow the jury or court to make an informed estimate of value, such proof is admissible. *United States v. Silver Queen Mining Co.,* 285 F.2d 506, 510 (10th Cir. 1960). In this case defendant presented competent evidence relative to the customs of the industry, conditions of the market, transportation to market, mining and reclamation costs. Where only the mineral rights are at issue, there is no rule of thumb against arriving at a market value per ton and multiplying by the quantity of minerals. *See United States v. 2,847.58 Acres of Land,* 529 F.2d 682, 686 (6th Cir.1976); *United States v. 237,500 Acres of Land,* 236 F.Supp. at 53–54. *See also Arkansas State Highway Commission v. Cochran,* 230 Ark. 881, 327 S.W.2d 733, 734 (1959) (testimony as to quantity of mineral multiplied by a fixed amount admissible where owner had already leased property); *West Virginia Department of Highways v. Berwind Land Co.,* 280 S.E.2d 609 (W.Va.1981) (approves

method of arriving at value of mineral in place by considering costs of operation, quality, market, demand and other factors multiplied by quantity, even where no separate mineral and surface estates).

■ Defendant's valuation evidence related to what a willing seller would urge upon and bargain with a willing buyer. Plaintiff's valuation evidence proceeded on the erroneous theory of measuring how the presence of minerals enhanced the value of the entire tract. In light of the fact that the jury's verdict was the exact figure as one of plaintiff's appraiser's estimate of damages, significantly lower than defendant's estimate of value, plaintiff's evidence must have prejudiced the jury. We find, therefore that defendant has met the burden of showing that an error in the admission of evidence in a condemnation case resulted in substantial injustice, warranting reversal. *State ex rel. State Highway Commission v. Zehm Enterprises, Inc.,* 649 S.W.2d 495, 497–98 (Mo.App.1983).

Defendant's second point on appeal is likely to occur upon retrial. During defendant's opening statement and Dessieux's direct testimony, defendant offered to prove that DeSoto Mining Company had made a written offer to purchase the condemned mineral rights from plaintiff for $60,000. Defendant argued that it was deprived of an essential opportunity to bolster the credibility of its evidence of value by showing the jury that DeSoto was prepared to support its projections of the quantity of barite located in the right of way and its market value by investing in a mining project. Although Dessieux's estimate of value was $80,000, it would not be so unusual, defendant argues, for DeSoto to try to obtain the minerals at a bargain price. That the offer was less than the estimate of value does not destroy the bolstering effect of the offer, defendant contends.

Plaintiff relies on the general rule that proof of an unaccepted offer to purchase real property is not admissible as evidence of value, at least when not testified to by the offeror. *State ex rel. State Highway Commission v. Koberna,* 396 S.W.2d 654, 664

(Mo.1965); *State ex rel. State Highway Commission v. Thurman,* 428 S.W.2d 955, 958 (Mo.App.1968). The reason generally advanced for the rule is that admitting evidence of offers would open the door for offers made in bad faith or as a result of collusion or fraud. *See 4 Nichols' The Law of Eminent Domain* § 12.311[2] (rev. 3d ed. 1981).

In *Koberna,* a realtor who made an offer on behalf of his client for the condemned property considered himself incompetent to render an opinion as to the market value of the land. The court then found no abuse of discretion in not admitting the offeror's opinion as to market value based on the offer. The court noted, however:

> Whether an expert witness, who has expressed his opinion as to the fair market value of land, may then fortify that opinion by testifying that he made an offer to purchase for that amount is an issue we are not called upon to decide in this case.

396 S.W.2d at 664. In this case Dessieux, an engineer for DeSoto, the offeror, and another representative of DeSoto, were available to testify to the genuineness of the offer to fortify the opinion as to the quantity and market value of the barite.

■ We believe that our courts can adhere to the practice of admitting only bona fide evidence of value without having to apply a rigid prohibition against the admission of any offer. The bona fide character of the offer is a preliminary question which must be decided by the trial court. *See State v. McDonald,* 88 Ariz. 1, 352 P.2d 343, 348–49 (1960) *and City of Grand Rapids v. Ellis,* 375 Mich. 406, 134 N.W.2d 675, 678 (1965) (test is a showing that the offer is bona fide). A bona fide unaccepted offer to buy the land, property or minerals in question can be admitted as part of the expert's basis of his opinion of value. *See Sutton v. State Highway Department,* 103 Ga.App. 29, 118 S.E.2d 285, 287 (1961).

■ We are not called upon in this case to decide whether evidence of an unaccepted offer is, in and of itself, evidence of value. We need decide only that a bona

fide offer can be used to fortify an expert's opinion as to the quantity and value of the condemned property or minerals. In determining whether the offer is bona fide and should be admitted, the trial court should be guided by the test established by the Illinois Supreme Court in *City of Chicago v. Harrison-Halsted Building Corp.,* 11 Ill.2d 431, 143 N.E.2d 40, 45 (1957):

> The offer must be made in good faith, by a [person] of good judgment, acquainted with the value of the real estate and of sufficient ability to pay. It must be for cash and not for credit or in exchange and it must be determined whether made with reference to the fair cash market value of the property or to supply a particular need or fancy. Private offers can be multiplied to any extent for the purpose of the cause, and the bad faith in which they were made would be difficult to prove. The reception of this kind of evidence stands upon an entirely different footing from evidence of actual sales between individuals or by public auction. The question of admission is one involving the discretion of the court and the decision of the court will not be disturbed unless it is manifestly against the weight of the evidence. The burden is upon the party seeking to have such evidence admitted to establish a sufficient foundation by showing that the offer was *bona fide,* for cash, and made by a person able to comply with the offer if it were accepted.

In addition, the offer must be testified to by the offeror, to give the opposing party adequate opportunity for cross-examination. *See Hardaway v. City of Des Moines,* 166 N.W.2d 578, 581 (Iowa 1969). If the offer for the property is made after the date of the taking, such as the offer here, the proponent must show that the value was unaffected by the condemnation proceeding.

The trial court has great discretion in admission of offers into evidence. Once the court makes a preliminary determination that the offer is bona fide, any further questions concerning the viability of the offer go to its weight and not to its admissibility.

We reverse the judgment entered in the trial court based on the jury's verdict, as it was premised upon the erroneous admission into evidence of plaintiff's valuation testimony. Plaintiff's experts failed to assign a value to the minerals in place. Upon retrial, the court may hear evidence from defendant as to the bona fide nature of the offer to purchase the minerals. If satisfied that the offer meets the above test, the trial court, in its discretion, may admit the offer to bolster the testimony of defendant's expert.

SIMON, P.J., and STEPHAN, J., concur.