**CITY OF SPRINGFIELD, Missouri, A Municipal Corporation, Plaintiff-Appellant,**

**v.**

**Lewis Crenshaw LOVE, on Exceptions of Modern Tractor & Supply Company, Inc., Defendant-Respondent.**

**Missouri State Highway and Transportation Department**

**and**

**Land Clearance for Redevelopment of the City of St. Louis, Amici Curiae.**

**No. 13890.**

Missouri Court of Appeals, Southern District, Division Two.

Nov. 20, 1986.

Motion for Rehearing or Transfer Denied Dec. 5, 1986.

Application to Transfer Denied Jan. 13, 1987.

Karen Marty, Asst. City Atty., Springfield, for plaintiff-appellant.

Gerald H. Lowther, Michael K. Cully, Lowther, Johnson, Lowther, Cully & Housley, Springfield, for defendant-respondent.

Bruce A. Ring, Chief Counsel, John H. Gladden, Springfield, for Missouri State Highway and Transp. Dept. Asst. Counsel, amicus curiae.

Sarah Siegel, General Counsel, St. Louis, for Land Clearance for Redevelopment of the City of St. Louis, amicus curiae.

HOGAN, Presiding Judge.

This is a condemnation case, heard below upon the exceptions to the report of commissioners filed by Modern Tractor & Supply Company, Inc. (hereinafter Modern Tractor or the condemnee). The City of Springfield (hereinafter the city or the condemnor) has exercised its power of eminent domain conferred by its charter to appropriate several parcels of land in the extreme southwest part of the city. The enabling ordinance found it necessary to appropriate this parcel and others for public street purposes in order to widen and improve Kansas Expressway, a north-south thoroughfare which runs along the west side of the city. Although all mention of the Highway 60 bypass was excluded from the trial upon the city's motion, Kansas will eventually connect that bypass (locally called the "James River Freeway") on the south with Interstate 44 on the north side of the city.

The parcel of land taken is relatively small. It is part of a 90–acre tract and contains slightly more than 5 acres or 223,-046 square feet. Upon trial of Modern Tractor's exceptions to a jury as provided by Rule 86.08, the condemnee's damages were assessed at the sum of $92,500.00 with interest in the amount of $23,675.79. The city has appealed. Five assignments of error have been briefed and argued in this court. Departing from our usual practice, we permitted the filing of briefs amicus curiae by the Missouri State Highway and Transportation Department (hereinafter SHC) and the Land Clearance for Redevelopment Authority for the City of St. Louis. We departed from our usual practice because the case has become something of a local cause celebre, and both SHC and the St. Louis organization expressed interest. Our files indicate the amicus briefs were served on both the condemnor and condemnee several months before the appeal was argued, without objection or response from either party. We feel free to consult those briefs, although they contain little or no information not contained in the city's brief.

The two principal assignments of error made by the city are contained in its points IA and IB. Both points are stated in self-defeating detail; both points overlap, and in consequence our opinion is of necessity somewhat repetitious. Slightly paraphrased, the city's points IA and IB are: a) that the trial court erred and abused its discretion in allowing witness O'Connell to testify to unaccepted offers to purchase the whole tract owned by Modern Tractor, and b) if evidence of the unaccepted offers was admissible, the condemnee laid no proper foundation for its admission and failed to show that the offers were bona fide.

The condemnee responds by asserting that the condemnor's objections to the evidence of unaccepted offers were insufficient, in several respects, to preserve anything for review, and that evidence of an unaccepted offer is admissible to prove the fair market value of a condemned tract of land if a proper foundation is laid and the condemnee's evidence was sufficient to establish a basis for its admission.

Some preliminary observations are necessary to an understanding of the case. Four days prior to trial, the city filed a motion in limine to exclude certain evidence. We have no docket entry of any pretrial conference, but the transcript indicates the trial court gave the motion careful attention. We direct our attention particularly to paragraph 1 of the motion. The city asked the court to exclude any mention of any evidence of any unaccepted offer to purchase the defendant's land by any person, "to attempt to show market value and/or damages to subject property. Such evidence is highly speculative, and subject to many collateral factors which would prejudice the jury against this Plaintiff." The city went on to suggest that

evidence of unaccepted offers is "contrary to Missouri law." The city also moved to exclude evidence of the probability of a change in the present zoning of the condemnee's land, asserting that any contemplated change in zoning depended upon the construction of U.S. Highway 60 bypass south of Springfield.

We recite this detail to show that the trial court had these objections clearly in mind when the trial commenced. The court again solicited counsel's views on the condemnor's motion in limine before trial, and counsel for the condemnor answered:

"Your Honor, in regard to the court's ruling on point one of the plaintiff's motion in limine, I of course differ with the court that on the basis of an unacceptable, unaccepted offer, it would not be admissible under the law, only with the exception it would be to prove a bona fide offer to show the demand for the land and the sale price itself would be admissible if they put someone on the stand [and] the court has ruled that he will allow that testimony after proper foundation."

The trial court then stated that its ruling would be deferred "depending on the proper foundation having been shown." Counsel for the city thereupon moved a mistrial because of the court's ruling; the court responded by saying that "at this stage," the court would deny "Point One of the Motion in Limine." The parties also discussed the exclusion of evidence concerning the possibility of rezoning. The court expressed the view, very indirectly, that evidence of rezoning would probably be received, but excluded any mention of the possibility of rezoning because of the construction of the Highway 60 bypass. What we have just recounted shows that the court and the parties were familiar with the evidentiary questions presented on this appeal, and with the trial court's preliminary rulings, before evidence was presented.

The condemnee's evidence of the value of the tract of land condemned at the time it was taken came from several witnesses. For our purposes, we need consider only the testimony of Mr. Barry Cox, chief managing officer of the corporation which owned the tract taken, Mrs. Pat Walker, and Mr. Daniel O'Connell.

Mr. Cox testified that on April 23, 1979 (the date of the taking), the condemnee owned a tract of land containing approximately 90 acres at the corner of Greene County Highway M and Cox Road. An aerial photograph taken by Mr. Cox shows the parcel to be an irregularly-shaped tract of open land in a residential area. We gather from the record that the tract is on the west side of Cox Road, which runs north and south, and immediately north of Highway M, which runs east and west. The petition itself describes the plot taken as the *east* 180 feet of the total acreage, which is accurate; nevertheless, Mr. Cox emphasized that the area taken included 458 feet which abutted Highway M in the city limits, and in square feet, came to 233,046 square feet of land.

Concerning the general nature of the "neighborhood," Mr. Cox testified that about ½ to ¾ miles north of the parcel, on Battlefield Road, there was an industrial park, where several industrial and commercial plants were located. On Highway M, some distance to the east, there was a new bank, a drive-in theatre, a church and a library. To the west, churches and another bank had been constructed. Immediately to the east on Highway M, there was an open shopping center in which possibly 10 stores were located.

The condemnee's basic contention, which runs throughout Mr. Cox's evidence and that of the condemnee generally, was that the highest and best use of the land taken was for commercial development, although such development would have required rezoning. At the time of taking, no application for rezoning had been made, and as far as the record shows, none had ever been made. Mr. Cox's testimony was, however, that he was a lifelong resident of the community, that he had followed the course of subdivision in the community and that de-

velopment of the City of Springfield was "growing very rapidly [to the] southwest."

In considerable part, Mr. Cox's opinion of the value of the tract appropriated was based on offers to purchase the entire tract for development as commercial property. Mr. Cox fixed the value of the lot at $2.25 per square foot. Such is the substance of Mr. Cox's evidence.

The condemnee also had the evidence of Mrs. Pat Walker. Mrs. Walker served on the city's planning and zoning commission from June 1977 to December 1979. Her testimony was that she had taken her work seriously and had pursued the subject of land use independently. During 1977, 1978 and 1979, when land use was before the commission, Mrs. Walker had actually viewed each tract of land about which there was some question of proper land use. Mrs. Walker had established a research business, called Resource Planning Management Associates. Part of the firm's business was "site selection and analysis and feasibility studies for people considering commercial and any kind of development." Mrs. Walker was associated with a university professor who taught land use, or "planning" at a local university. We suppose Mrs. Walker was qualified as an expert on at least some aspects of that subject our profession now refers to as "Urban Planning and Land Development Control."

Mrs. Walker testified that during her tenure on the planning and zoning commission, the southwest part of the city had "grown over 70 percent compared to only 11 percent growth in the rest of the city." Mrs. Walker had looked at the condemnee's tract with a view to determining the "reasonable foreseeability of being rezoned in 1979." Mrs. Walker testified—*without objection*—that if the condemnee had applied for rezoning so as to permit commercial use, she believed it would have been rezoned. On cross-examination, the city succeeded handsomely in getting Mrs. Walker to repeat and fortify her opinion.

The witness whose testimony is the object of controversy was one Daniel J. O'Connell of Del Mar, California. Mr. O'Connell's business was to develop shopping centers and other commercial developments, professional office buildings and apartment buildings. He was experienced in the real estate business in Springfield; he had bought and sold real estate zoned R-1 (residential) and otherwise. He was part owner of two enclosed regional shopping centers (uniformly called "malls" in southwest Missouri) and at trial time, he owned land in the area of Battlefield Road. Mr. O'Connell was "connected with" 10 to 15 shopping centers of a value of $100 million dollars; his firm was one of the larger commercial developers in the United States.

Mr. O'Connell had been interested in purchasing real property for commercial development in Springfield during the period 1974–1976. He commissioned a number of studies. The "fellow from Kentucky" who made the studies "came up with ... three possible sites" and recommended the Cox tract as the "number one site." On the basis of O'Connell's experience in developing commercial areas, he had formed an opinion concerning the highest and best use for the condemnee's property. The witness was then asked: "Did you make an offer?" At this point, the condemnor made the following objection:

"MR. POWERS: Your Honor, the defendant is obviously getting into the area of an unaccepted offer and if he is going to ask any questions other than that an offer was made, proper foundation has not been laid under the—

\*     \*     \*     \*     \*     \*

THE COURT: I'll permit you to ask if the offer was made. The objection will be sustained as to anything further in view of the objection by Mr. Powers as to foundation which has not been laid at this time."

The trial court, exercising considerable caution, then permitted the condemnee to lay its "foundation" out of the hearing of the jury. To make the basis of our opinion clear, it is necessary to set forth such of

the interrogation as seems relevant. (All emphasis ours.)

"Q. ... Mr. O'Connell, I will ask you when this offer was made to the [condemnee] in this case.

A. Around 1975.

Q. Was it repeated several times in the ensuing years?

A. I would say at least two times.

\* \* \* \* \* \*

Q. Did you personally make the offer yourself?

A. Yes, sir.

\* \* \* \* \* \*

Q. Now, was this offer made in good faith?

A. Yes, it was.

Q. Were you acquainted with what you thought to be the value of the real estate?

A. I had a pretty good idea at the time, yes.

Q. Was that idea based on the fact that you had bought and sold numerous tracts of commercial land and residential land and every other kind of classification in the Springfield area?

A. Yes, *in conjunction with my partner at the time guiding me.*

Q. You said you made the offer. Could you have paid for the land?

A. Yes.

Q. Did you offer cash?

A. Yes.

Q. Did you believe the property to be good for about any commercial development?

A. A multitude of projects of a commercial nature."

The condemnee then proposed to show that Mr. O'Connell offered the condemnee "on a square footage basis $2.00 a square foot."

On cross-examination, the condemnor elicited the following:

"Q. When did you leave Springfield?

A. I left in '73 and moved to Dallas.

Q. Was this matter ever discussed prior to 1975?

A. No, I don't believe so.

Q. Did you have other shopping centers underway in Springfield at that time?

A. *Just in the predevelopment stages I did.*

Q. Which ones were they?

A. North Town Mall.

Q. Were you involved in any other malls here at that time or later?

A. *Just planning one. I wanted to do another regional mall in Springfield.*

Q. Has that now reached fruition, has it been done?

A. No.

Q. Just planning. Where is that located, that you planned?

A. *We are still looking at the land right now.*

\* \* \* \* \* \*

Q. And, of course you have testified that you were acquainted with the real estate involved. How long had you been acquainted with this real estate prior to 1979?

A. Probably since about 1971 or 1972.

Q. Did you always deem it to be prime property for a shopping center?

A. *For [a] future development I would so, yes.*

Q. When you say future development, how far in the future?

A. *Five to ten years.*

Q. From what time?

A. '71, '72.

Q. Referring you to April 23, 1979, how long would it take to develop that in the future?

\* \* \* \* \* \*

Q. If you had purchased it [in 1979], how long?

A. In 1979?

Q. Yes.

A. *It would take anywhere from two to five years.*

\* \* \* \* \* \*

Q. This ability of being able to pay cash, would there be no financing whatever, is it absolutely cash money?

A. At the time I was in partnership with a gentleman in Texas who was a very wealthy man and with his line of credit plus cash on hand, he was in a position to pay all cash.

\* \* \* \* \* \*

Q. Is your testimony then it is usually all cash?

A. In this case it is all cash.

Q. Why?

A. I think at the time, and again, I had a partner who was a very wealthy man. He was not interested in having local people carrying notes or anything like that. It would all be paid off in personal financing.

Q. Did he make the offer to—

A. —No, he sent me up here to make the offer."

At the end of all this preliminary questioning for the purpose of laying a foundation, counsel for the condemnee asked the court if it would permit the jury to hear the amount of Mr. O'Connell's offer. Counsel for the condemnor then stated in the record:

"MR. POWERS: Your honor, I, on the record, move for a mistrial on the basis that this type of offer has too much opportunity of collusion and fraud between the parties.... [P]laintiff moves for a mistrial on the basis of point one of the Motion in Limine, and based on the testimony presented from the stand here by Mr. O'Connell."

The motion was denied by the trial court. Thereupon in the presence of the jury, Mr. O'Connell testified that he had offered Mr. Cox $2.00 per square foot, in cash, for the entire tract, in short, $7,500,000.00 for the entire tract.

■ As previously indicated, the principal question on appeal is whether the trial court erred in admitting Mr. O'Connell's testimony. The arguments pro and con have been stated in such detail as to become confusing, but in essence the condemnor claims that the admission of Mr. O'Connell's testimony to unaccepted offers was prejudicial error. We find no merit in the condemnee's assertion that the condemnor's objection was untimely or not sufficiently specific. Before the trial began, and at the time the condemnee was attempting to qualify Mr. O'Connell's testimony out of the hearing of the jury, counsel for the city made his objection as explicitly as he could. The procedural rule which applies here is that when a timely and sufficient objection has been squarely made, an appellant need not follow it up with repeated objections to preserve the point for review. *Chester v. Shockley*, 304 S.W.2d 831, 835 (Mo.1957); *Wooten v. Friedberg*, 355 Mo. 756, 764, 198 S.W.2d 1, 6[4] (1946); *Harrison v. St. Louis-San Francisco Ry. Co.*, 339 Mo. 821, 831, 99 S.W.2d 841, 845[5] (1936). Here, the trial court understood the nature of the city's objection, and it was unnecessary for the condemnor to renew that objection at the time O'Connell's testimony was received by the jury.

■ In arguing that evidence of unaccepted offers is admissible to show value in condemnation cases, both parties have cited a great many precedents from this and other jurisdictions, many of which are only marginally relevant. We have examined most of them, but we do not propose to survey the general law; we pass only on the situation before us. The general rule is that an unaccepted offer to purchase the realty taken by the condemnor is *not* admissible in evidence to show its value, and that rule has been followed in this jurisdiction for many years. *State ex rel. State Highway Commission v. Koberna*, 396 S.W.2d 654, 664[17] (Mo.1965); *Mayor, Councilmen, and Citizens of the City of Liberty v. Boggess*, 321 S.W.2d 677, 682 (Mo.1959); *State ex rel. State Highway Commission v. Clevenger*, 365 Mo. 970, 981, 291 S.W.2d 57, 63 (1956); *City of St. Louis v. Gerhart Realty Co.*, 328 Mo. 103, 108–109, 40 S.W.2d 661, 663–664 (1931). The cases cited reflect the law in almost every American jurisdiction, although a

few states, particularly California, Illinois and Georgia, have rejected or qualified the general rule. Annot, 25 A.L.R. 4th 571 (1983); 5 Nichols, Emiment Domain, § 21.4 (Rev. 3d ed. 1986). Of course, the law cannot all be stated in one sentence; in *City of St. Louis v. Vasquez,* 341 S.W.2d 839, 848[21] (Mo.1960), our Supreme Court held that a condemnee may show that there has been an active interest in purchasing his land, because such evidence is relevant on the question of the general desirability and demand for the land, a factor which an ordinarily prudent person would take in consideration in reaching a conclusion as to its fair market value. *Vasquez,* however, does not permit a condemnee to show the *amount* of the offer. *State ex rel. State Highway Commission v. Thurman,* 428 S.W.2d 955, 958[3] (Mo.App.1968).

In response to the condemnor's argument that Mr. O'Connell's testimony was improperly received, the condemnee flatly asserts: "Evidence of an unaccepted offer is admissible to prove fair market value." *State ex rel. State Highway Commission v. Langley,* 422 S.W.2d 309 (Mo.1967), is also cited. In that case, the court addressed the relevance of the price paid by the owner as evidence of the value of the property at the time of its appropriation. It was also specifically held that evidence of the price paid by the owner was evidence of the value of the property at the time of its appropriation. It was further specifically held that evidence of the price paid at a probate sale was not, in the circumstances, inadmissible because the sale was a "forced sale." The condemnee also cites *City of St. Louis v. Vasquez,* 341 S.W.2d 839, and *State ex rel. State Highway Commission v. Koberna,* 396 S.W.2d 654, neither of which aids the condemnee's position. *State ex rel. Missouri Highway and Transportation Commission v. Roth,* 687 S.W.2d 662 (Mo.App.1985), dealt with the criteria for determining whether sales of other tracts are really "comparable" and did not address the question of the admissibility of unaccepted offers.

Of the authorities cited to this point, only *State ex rel. State Highway Commission*

*v. Pfizer, Inc.,* 659 S.W.2d 537 (Mo.App. 1983), supports the condemnee's argument that unaccepted offers to purchase land are admissible in evidence to prove its value. We believe *Pfizer* states an exception to the general rule and was not meant to have the radical effect attributed to it by the trial court and both parties to the action. *Pfizer* dealt with the proper method of ascertaining the value of a mineral estate which had been effectually severed from the surface estate. The court held that an unaccepted offer to purchase the mineral estate by the lessee which had been mining the property for some time was admissible as evidence of the value of the minerals in place. We cannot, of course, speak for our colleagues at St. Louis, but to reiterate, we think the case represents an exception to the general rule. The court wrote carefully; as it noted, the sole issue at trial was the value of the minerals in place. *Pfizer,* 659 S.W.2d at 540. The court then declared, 659 S.W.2d at 540:

"We recognize that some speculation is inherent in the valuation of all resource property, but if the quality of the proof of value follows the custom of the industry ... and is sufficient to allow the jury or court to make an informed estimate of value, such proof is admissible. [Citation omitted]. In this case [the condemnee] presented competent evidence relative to the customs of the industry, conditions of the market, transportation to market, mining and reclamation costs...."

The evidence received as an offer in *Pfizer* was based on peculiar technical expertise, and although it was received as an unaccepted offer, it was based on an expert opinion not substantively different from the opinion of the value of minerals in place which was received in *State ex rel. State Highway Commission v. Foeller,* 396 S.W.2d 714 (Mo.1965). In *Pfizer,* the court laid much emphasis on the bona fides of the offer, accepting the criteria laid down by the Illinois court in *City of Chicago v. Harrison-Halsted Building Corp.,* 11 Ill.2d 431, 143 N.E.2d 40, 45 (1957). We have carefully assessed the opinion of our

colleagues at St. Louis in *Pfizer*, and do not believe it goes further than to state an exception to the general rule and is not applicable in this case, which most certainly does not involve the valuation of minerals in place.

In our considered view, Mr. O'Connell's testimony was subject to the general rule excluding unaccepted offers as proof of value in condemnation cases. It has, again in our considered view, all the vices apprehended by our Supreme Court in *City of St. Louis v. Gerhart Realty Co.*, 328 Mo. at 109–110, 40 S.W.2d at 664. Among other things, we consider Mr. O'Connell's evidence to have been speculative; the evidence we have set out indicates that Mr. O'Connell had no particular, specific purpose in mind for the Cox tract, but was interested in the land only as it might provide a satisfactory site if a development could be promoted. Moreover, the offer testified to had much the same weakness as the offer rejected in *Koberna*, 396 S.W.2d at 664–665. Although Mr. O'Connell referred to a "partnership with a gentleman [from] Texas who was a very wealthy man," he also testified that he was *sent* by this anonymous gentleman to make the offer. Mr. O'Connell's testimony concerning his "partner's" ability to pay $7,500,000.00 in cash was obviously hearsay, leaving the real possibility that the transaction could have been completed to speculation. We neither suggest nor imply that Mr. O'Connell's testimony was contrived, but the possibility of fabrication of such evidence is, as noted in *State ex rel. State Highway Commission v. Clevenger*, 291 S.W.2d at 63, a sufficient reason to reject this species of proof, even though the offer be bona fide in a particular case.

Further, even though neither party has raised the point in connection with Mr. Cox's testimony and that of Mr. O'Connell, both testified as if rezoning were an accomplished fact. We concede that the condemnee had evidence of the reasonable probability of rezoning. Even so, it was improper for the witnesses to value the property as if rezoning was an accomplished fact. *Union Electric Company v. Saale*, 377 S.W.2d 427, 429[1–6] (Mo.1964); *State ex rel. State Highway Commission v. Carlson*, 463 S.W.2d 74, 81[5] (Mo.App. 1970). A party may value the property by showing either (1) the value based on the present zoning plus a probability factor for probable rezoning in the future, or (2) the value based on rezoning as an accomplished fact, less a discount factor to allow for the uncertainty of the probable rezoning. *Carlson*, 463 S.W.2d at 81–82[5]. In this particular case, Mrs. Walker testified that "four out of five" large tracts—presumably comparable to the Cox tract—were rezoned during her tenure on the planning and zoning commission, but when she was pressed as to the strip of property being taken, she qualified her opinion by stating: "That depends on the individual case ... the cases are all individually looked at and there are frequent negotiations that go on in a zoning matter between the city planning staff and the developer because of problems that may exist on the site.... It would depend on the individual case." In our view, the uncertainty of Mrs. Walker's testimony made it necessary for the condemnee's witnesses to make some allowance for the uncertainty of rezoning in the future.

We do not, nevertheless, base our finding of error upon the consideration just mentioned. We hold, on the basis of the precedents first cited, that the admission of Mr. O'Connell's testimony was error requiring reversal, believing that we are firmly held and bound by those cases. *Pfizer* only states an exception to the general rule; it does not purport to announce a new rule of law.

Two other points must be addressed to complete proper consideration of this appeal. By its point IIIA, the condemnor objects to the testimony of condemnee's witnesses Jacobson and Burlison concerning sales of comparable tracts of realty. The substance of the condemnor's argument is that the sales upon which those two witnesses based their opinions were not really "comparable sales." We have

concluded that the testimony of witness Jacobson was not timely objected to, but the condemnor did move to strike Burlison's evidence as soon as its asserted error became apparent, and in any event because a retrial may be necessary, we conclude we should give the condemnor's assignment of error consideration sua sponte. The five sales to which Jacobson and Burlison testified were the same sales. The condemnor contends that admitting evidence of the comparable sales was error because: (1) the sales involved were sales of commercial property; it was necessary for the condemnee to show a "reasonable probability" of a change of zoning of its property in the near future, and no such showing was made; and (2) even if there was evidence of a "reasonable probability" of a zoning change, the five sales testified to as part of the basis for Mr. Jacobson's and Mr. Burlison's opinions were so dissimilar that evidence of those sales was inadmissible as a matter of law.

■ A number of factors may be considered in determining whether there is a reasonable probability of a zoning change in the near future. Those factors were considered and discussed in *State ex rel. State Highway Commission v. Carlson,* 463 S.W.2d at 81[3, 4], and need not be restated here. If believed, Mrs. Walker's testimony alone might be sufficient to show a reasonable probability of rezoning of the whole tract. Her testimony was subject to the limitation noted, but there was evidence that the city was growing toward the southwest—toward the condemnee's property. There was also evidence of commercial and industrial growth in the general area of the condemnee's property. As we understand the condemnor's brief, it contends that evidence of the comparable sales was inadmissible as a matter of law, and that the trial court abused its discretion in admitting the evidence of comparable sales. It has been said that a trial court abuses its discretion in deciding to admit evidence of comparable sales only when reasonable men could not differ about the propriety of its action. *State ex rel. Missouri Highway and Transportation Commission v. Roth,* 687 S.W.2d 662, 666[1] (Mo.App.1985). Moreover, in that same case, it was held that admission of evidence of comparable sales is error as a matter of law only when the comparable sales have no probative value whatever. *Roth,* 687 S.W.2d at 666[1]. In this case, there is neither error as a matter of law nor an abuse of discretion.

■ By its point IIIB, the condemnor objects to the trial court's refusal to admit any of its evidence of comparable sales outside the City of Springfield. We agree that the test of admissibility of evidence of comparable sales is not whether it lies one side or the other of a political dividing line, be it city, township or county, but is whether the land sold is comparable in character and locality to the land taken. See, e.g., *Knollman v. United States,* 214 F.2d 106, 109[6–8] (6th Cir.1954). Nonetheless the condemnor through its experts introduced evidence of twelve other comparable sales. The trial court's error in the respect assigned is not error materially affecting the merits of the action within the meaning of Rule 84.13(b).

Condemnor's other assignment of error concerns an argument to the jury. It is not likely to occur on retrial, if any, and we need not address it.

For the error noted in the admission of Mr. O'Connell's testimony and for that reason only, the judgment is reversed and the cause is remanded generally.

PREWITT, C.J., and MAUS, J., concur.

CROW, J., recused.