**CITY OF DES PERES, Missouri, Plaintiff/Respondent,**

v.

**The PERSELS PARTNERSHIP, Ralph Nelson Persels, Jr., et al., Defendants/Appellants.**

**No. 59544.**

Missouri Court of Appeals, Eastern District, Division Three.

June 2, 1992.

Joe Bill Carter, Nicholas J. Riggio, Sr., St. Louis, for defendants, appellants.

Kevin M. O'Keefe, St. Louis, for plaintiff, respondent.

STEPHAN, Judge.

This condemnation action involves a taking by the City of Des Peres ("City"), plaintiff-respondent, of an approximately .52 acre tract of land in the exercise of its power of eminent domain. The tract ("Parcel") is located at 1000 North Ballas Road in Des Peres, Missouri, in St. Louis County and was owned by defendants-appellants, the Persels Partnership, Ralph Nelson Persels, Jr., Jane Lee Elder, Patrick O. Elder, Jean Doris Netzeband and William Netzeband ("landowners"). Landowners appeal from the judgment of the trial court awarding them $115,000 as damages pursuant to a jury verdict. We affirm.

Appellants raise two points on appeal. Both complaints are directed toward alleged errors during closing argument. Neither has any merit.

Landowners assert in their first point that the trial court erred in sustaining the objection by the City to portions of their closing argument and in commenting on certain evidence to the jury. However, their motion for new trial refers only to

alleged impropriety by the trial court's comments to the jury. Thus, to the extent that landowners' first point predicates error by the trial court in sustaining the objection by the City, nothing is preserved for appellate review. We decline to review for plain error. Rule 84.13. Landowners properly preserved the remainder of their point directed to alleged improprieties based on the trial court's remarks to the jury.

During trial, landowners' appraiser had referred to the construction of the Kelley Memorial Bridge, a concrete overpass over Interstate 270 just north of Manchester Road, as evidence of the commercial growth in the area encompassing landowners' property. The bridge had been built across Interstate 270 to access an office project in nearby Town and Country. Landowners obviously hoped this evidence of commercial demand in the area would lead to a higher valuation of their property based on commercial use, rather than a lesser value based on residential use for which their property was zoned.

On appeal, landowners focus on the judge's alleged comment during their closing argument that there was no evidence that construction of the bridge had cost one million dollars. They argue the judge's comment effectively undermined all credibility of their appraiser. As proof of the comment's prejudicial impact on the jury, landowners contrast their appraiser's assessment of their damages at $619,000 with the $115,000 damages actually awarded by the jury.

Although landowners' appraiser did refer to the construction of Kelley Memorial Bridge, his only testimony about bridge costs referred not to the Kelley Memorial Bridge but to the cost of a bridge constructed at the Maryville Campus on Highway 40, a location several miles away. We can find no reference to the cost of the Kelley Memorial Bridge anywhere in the transcript. Thus, any observation by the trial court that there was no evidence of a million dollar cost to build the Kelley Memorial Bridge was true.

Furthermore, our review of the transcript portion which landowners cite in support of their argument does not even mention the Kelley Memorial Bridge. During landowners' closing argument, the colloquy about which landowners complain is as follows:

MR. CARTER [Landowners' Counsel]: Mr. Demba [landowners' appraiser] doesn't tell you that the property is worth $15.26 a square foot for—based upon the closest commercial comparable that isn't even zoned commercial. It's zoned residential.

He says looking at all of this evidence and making all these adjustments for economic factors and the problems and everything—it is obvious that there are problems. You have somebody here, to get the ground that they paid $6.96 a square foot for, spend another million or two million dollars.

MR. O'KEEFE [City's Attorney]: Objection. There is no evidence.

THE COURT: Mr. Carter, I know it is closing. I don't usually like to step on it but let's contain yourself to things of evidence.

MR. CARTER: There was testimony or evidence that somebody spent a million dollars. Mr. Demba testified—

MR. O'KEEFE: The Court has already ruled.

THE COURT: I have told you to move off of it. There is no grass on the church in this testimony. There is no million dollars.

We can find no impropriety in the Court's comments disposing of the City's objections to landowners' closing argument. He did not abuse his discretion in sustaining the City's objection to such argument by landowners on the grounds there was no evidence. Point denied.

■ In their second point on appeal landowners state as follows:

The trial court erred in sustaining objections to defendants' counsel's argument that the jury was entitled to consider certain prices and other values testified to by defendants' appraiser, including an option contract on a piece of prop-

erty near the parcel being taken, in that such evidence of real estate activity was admissible for the purpose of establishing defendants' appraiser's opinion that the highest and best use of that parcel being condemned was a commercial use, and thereby prejudiced defendants by causing the jury to disregard defendants' appraiser's testimony.

During the trial, Mr. Demba, landowners' appraiser, had testified concerning real estate sales in the immediate area around landowners' Parcel, including a person who had recently received an option contract for $162,000 on property near landowners' Parcel. Despite objections on various grounds by the City's attorney, the trial court admitted Mr. Demba's testimony.

The following excerpt highlights the explanation by landowners' counsel during closing argument where he attempted to differentiate comparable sales from certain other evidence indicative of activity to establish the value of the Parcel:

> So in many instances simply having heard something said is not enough. In this area you can use all kinds of data to show activity and to show what is going on and it is admissible to show the activity. To show what has gone on and show things like traffic counts. All kinds of things like that that theoretically Mr. Dinan didn't go out and make those traffic counts. Those are things that can go in for particular purposes without having to move with exactitude.
>
> And the rules are different when we get into the aspect of comparisons and there we have said you have to have precise enough data. Valuations from the assessors office. You have to have a buyer or seller. Somebody has to confirm that. That is simply to give you an explanation. But you have the aspect of these other values in here and circling around—

The City objected and, at a side bar conference, protested that counsel was "attempting to invite the jurors to utilize evidence offered for a limited purpose of now establishing value." Landowners' counsel responded he meant that "these figures are relevant to activity." He resumed his argument to the jury saying, "What I was simply trying to say is this activity and the prices that were paid shows that there is activity. It is something that you have a right to consider in considering whether or not—" The City interrupted with the objection that "[t]he prices discussed are not evidence of activity. Activity is evidence of activity and Mr. Carter is inviting the jury to misuse the evidence." Landowners' counsel rephrased his argument that "[t]he prices that are paid you have the perfect right to use in considering whether or not there has been activity." The City's counsel again objected; the trial court sustained the objection and admonished the jury to disregard the last comment because "[t]he price of those lots has nothing to do with value. It is only to show activity." Landowners' counsel continued his closing argument saying as follows:

> The comparables, the way that our system is set, the comparables are the things that are used to establish value and to prove up the opinion of the appraiser. And he is required to show some comparables if that's relevant to the kind of appraisal he does.
>
> The prices and the things that you have heard that are not referred to as comparables are things that you have a right to consider in considering whether or not there was activity in this area.

The City's counsel immediately renewed his objection that "[p]rices are not activity." The trial court agreed and suggested to landowners' counsel that he go on to a new area in his closing argument.

A careful review of the foregoing closing argument still leaves unclear the specific complaint landowners raise as trial court error. From their brief, the basic thrust of landowners' argument appears to be that they were entitled to argue in closing to the jury that the price of an expired option contract on a piece of property near landowners' Parcel constituted real estate activity. Although evidence concerning the expired option contract had been admitted despite the City's objection, the trial court did not abuse its discretion in limiting references, if any, to such contract during

closing argument. The general rule is to exclude unaccepted offers to buy as proof of value in condemnation cases. *City of Springfield v. Love*, 721 S.W.2d 208, 214 (Mo.App.1986). An expired option contract is effectively an unaccepted offer. Furthermore, the discussion in closing argument over landowners' efforts to argue "prices" as evidence of real estate activity to establish their Parcel's value never directly refers in any way to the option contract. We are at a loss to discern any basis for landowners' contention that the trial court's control of closing argument caused the jury to disregard the testimony of landowners' appraiser. Point denied.

The judgment of the trial court is affirmed in all respects.

PUDLOWSKI, P.J., and CRIST, J., concur.